COGDELL v. WILMINGTON AND WELDON RAILROAD CO.

(Filed May 13, 1902.)

1. EVIDENCE—*Opinion Evidence—Negligence.*

In an action against a railroad company for the death of a person while unloading goods from its car, due to the unsoundness of an apron covering the space between the car and the platform, evidence that a sound apron would have borne a person of the weight of the deceased is incompetent as an expression of opinion, but is not prejudicial if the jury finds that the railroad company was negligent in maintaining the defective apron.

2. EVIDENCE—*Incompetent—Negligence.*

In an action against a railroad company for the death of a person while unloading goods from its car, due to the unsoundness of an apron covering the space between the car and platform, evidence that the apron, if sound, would have held weight of the deceased, is incompetent where there is no evidence tending to show that the deceased stood upon the apron.

3. CONTRIBUTORY NEGLIGENCE—*Evidence—Burden of Proof—Acts 1887, Chap. 33.*

The evidence in this case warrants the jury in finding the deceased guilty of contributory negligence, although the burden of proving such negligence is on the defendant.

Cogdell v. Railroad.

4. PLEADINGS—*Contributory Negligence—Acts 1887, Chap. 33.*

Where an answer alleges that the death of intestate of plaintiff was caused by the negligence and fault of the intestate himself, the allegation is sufficient to raise the question of contributory negligence.

5. EVIDENCE—*Written Statements.*

In an action for the death of intestate of plaintiff, written statements, not signed, made by impeaching witnesses as to what witness of plaintiff told them, are incompetent.

6. CONTRIBUTORY NEGLIGENCE—*Intoxication—Voluntary.*

In an action against a railroad company for the death of a person while unloading goods from its car, where the deceased voluntarily became intoxicated and was killed in consequence thereof, he would thereby be guilty of contributory negligence.

7. CONTRIBUTORY NEGLIGENCE—*Negligence—Railroads.*

In an action against a railroad company for the death of a person while unloading goods from its car, an instruction that if deceased fell from the car on an apron and did not know of the unsoundness thereof, he would not be negligent, was properly modified by adding, "unless the fall was the result of want of care."

8. CONTRIBUTORY NEGLIGENCE—*Negligence—Proximate Cause.*

It was proper to refuse to instruct that if intestate of plaintiff, by reason of intoxication, fell from a car on an apron covering the space between the car and platform, and the apron would have sustained his weight if built of sound material, defendant would be liable.

9. CONTRIBUTORY NEGLIGENCE — *Presumptions — Burden of Proof—Acts 1887, Chap. 33.*

In an action against a railroad company for the death of a person while unloading goods from a car, it was proper to refuse an instruction that the law presumes that a person killed by the negligence of another has exercised due care himself, the burden being on the defendant to prove the intestate of plaintiff guilty of contributory negligence.

Clark and Douglas, J.J., dissenting.

ACTION by Mariah Cogdell, administratrix of Samuel Cogdell, against the Wilmington and Weldon Railroad Company, heard by Judge O. H. Allen and a jury, at February Term, 1901, of the Superior Court of BEAUFORT County. From a judgment for the defendant, the plaintiff appealed.

*Chas. F. Warren,* for the plaintiff.
*Small & McLean,* for the defendant.

COOK, J.   Defendant company delivered at Washington, upon its track at the wharf, a carload of coal consigned to the Stryon Transportation Company. According to the agreement between them, it was the duty of the consignee to unload the coal from the car. Plaintiff's intestate was employed by the consignee to unload the coal, and, while undertaking to do so, fell into the river and was drowned, on account of which this action was instituted.

The contention of plaintiff is that defendant company was negligent in the construction of its premises provided for delivering this freight, and in leaving an open space between the car and platform two or three feet wide over the water of the river, and in covering said space with an apron made of cedar-hearted, or unsound, timber, and while her intestate was using said apron by standing thereon, in unloading coal from the car, it broke, and intestate fell through into the water and was drowned; or that, if not using the apron to stand upon, he slipped and fell on the same, which, by reason of its unsoundness, broke, and he fell through into the water and was drowned. Defendant, after denying its negligence, avers in its answer "that the death of intestate was not caused by any negligence of defendant, but was caused by the negligence and fault of plaintiff's intestate himself," and insists and relies upon its plea of contributory negligence.

There were three issues submitted to the jury: "1. Did

Samuel Cogdell come to his death by the negligence of defendant, as alleged? 2. If so, was he guilty of contributory negligence? 3. What damages, if any, is the plaintiff entitled to recover?" The jury answered the first two in the affirmative, and therefore did not respond to the third. Judgment was rendered in favor of defendant, and plaintiff appealed.

Of the thirty-eight exceptions taken by plaintiff, those which relate to the negligence of defendant company and to the damages are not material to this decision.

The evidence relating to the accident shows that intestate, when last seen alive, was upon the car of coal throwing off lump coal with his hands upon the platform; and a few minutes thereafter he was missed, search made and his body found in the water. When taken from the water, his body was still warm, and bruises were found upon his left knee, shoulder, back of his head and about his right eye. Upon the side of the coal-car, about six inches from the top, were found finger prints of both hands ranging straight down, and the print of the toe or heel of a shoe near the finger prints. The prints raked about one-half way down the side of the car, or a little more. The "scrape took the paint of," and the apron was broken immediately below the finger and toe (or heel) prints. The apron was made of planks an inch or an inch and a half thick, sixteen feet long, and nailed together with battens across the underside, and was fastened to the platform with hinges and folded over, so that the other side rested against the coal-car; and the breaks in the planks revealed their unsoundness. This apron had been used to keep the coal from falling through into the water, and also by the laborers in standing upon while engaged in unloading coal. It was covered over with coal dust, and had been in use three or four months, so that if any defect existed in its make or material it was not apparent. Defendant contends that plaintiff, not-

withstanding its negligence, can not recover, for that intestate was negligent in voluntarily putting himself in a drunken condition, and while so drunk and unfitted undertook to do the work, and in doing so fell off, and that his drunken condi- tion was the immediate or proximate cause of his death, and his negligence, co-existing with defendant's, defeats a re- covery.

The evidence as to intestate's general condition, as well as that relating to his condition on the morning of the accident, is very conflicting. That introduced by plaintiff tends to show that he was a sober, energetic, industrious, able-bodied laborer and good provider for his family, and that he was sober at the time he went to the car to unload it; while that of defendant tends to show that he was a bar-room loafer, rarely ever sober, a chronic drunkard, and was so drunk when he started to the car, 15 or 30 minutes before he was found drowned, that he could not walk straight, but staggered as he went along; that he took a "short" in Dudley's bar, and went out and then came back and took another "short," and after taking the second one, his son treated him to another; that he bought a half pint of whiskey at Simmons' bar and drank about half of it, and put the balance in a bottle.

The second exception (which also covered exceptions 4, 5, 8 and 14) is to the exclusion of evidence. Plaintiff pro- posed to ask the witness "If this plank of the apron had been sound and not cedar-hearted or rotten, could a man of Cog- dell's weight and size have stood upon it with safety and thrown off the lump coal, or fallen on it from the top of the car without its breaking under him?" This question was directed to the inquiry as to the negligence of defendant com- pany in providing an unsound and unsafe apron, and is imma- terial to this decision, since the jury found that issue in favor of plaintiff. It could not relate to the alleged contrib- utory negligence or assumption of risk by intestate, because

all the evidence shows that the rottenness or unsoundness of the timber was *latent* and not discoverable until *after it was broken*. However, we see no error in its exclusion. The weight of Cogdell, quality and condition of the lumber of which the apron was made, and height of the car above the apron, were shown to the jury by the evidence. With these facts fully described before them, the jury could judge for themselves as to the strength of the plank and effect of a fall, equally as well as the witness, and then his "opinion" would have been superfluous, and therefore should be excluded. "The opinion rule is a rule based on the thought that when all the data of drawing an inference are before the jury, * * * it is superfluous to add, by way of testimony, the inference which they can equally well draw for themselves, * * * the witness's opinion is excluded, not because inferences as such are objectionable, but because the inference under the circumstances is superfluous, * * * and adds nothing to the essential data before the jury." 1 Greenleaf Ev., Sec. 441b. "The general rule undoubtedly is that witnesses are restricted to proof of facts within their personal knowledge, and may not express their opinion or judgment as to matters which the jury or the Court are required to determine." 1 Rice on Evidence, 325; 3 Taylor on Ev., Sec. 1414. The opinion here sought does not come within any of the exceptions to the general rule, such as identification of persons, tracks, handwriting, etc., the opinion about which is formed from comparison in the mind of the observer, or as to sanity or insanity of a person where the opinion is formed from the expression, tone, look, gestures, temper, etc. (*Clary v. Clary*, 24 N. C., 78), which can not be, from their very nature, described by the witness to the jury; nor is it contended that it comes within the rule as to experts.

Exceptions 3, 7, 12 and 13 are taken to the exclusion of evidence offered to show for what purpose the apron was

useful and convenient; and if constructed of sound plank and securely fastened, a man could stand on it and throw off lump coal from the edge of the car. Primarily, this evidence tends to show negligence by defendant company, which is not under consideration; and secondarily, to justify intestate in using it for such purposes, if he did so; but, as we have already said, there is no evidence tending to show that he did stand upon the apron at all, or that he was using the apron for such purpose at the time of the accident, and, if he had been doing so, there was no evidence to show that he knew or could have known of any defects in the apron. So we do not sustain these exceptions.

Whether intestate's death resulted from his own negligence in going upon the coal-car after becoming so drunk that he could not take care of himself, was a question for the jury to determine upon the evidence submitted, and the burden of proving the same is imposed by law (Acts 1887, Chap. 33) upon the defendant. There was evidence, if believed by the jury, to establish such negligence. But plaintiff insists that the plea of contributory negligence was not raised by the answer, and the second issue should not have been submitted to the jury, which was ruled against her, to which she excepted. (Exception 17.) We think his Honor properly submitted such issue.

In its answer, defendant avers "that the death of intestate was not caused by any negligence of defendant, but was caused by the negligence and fault of plaintiff's intestate himself." This is a strict compliance with the statute (Acts 1887, Chap. 33), and put plaintiff upon notice as to that defense, as fully appears from the fact of her being prepared with evidence to meet the charge of going upon the car in a drunken condition. However, if plaintiff had not anticipated, and could not with reasonable certainty have anticipated the defense, it would have been proper for the Court,

upon application, to have ordered that a bill of particulars be furnished as prescribed in The Code (Clark's Code, Sec. 259, and cases there cited).

Exceptions 15 and 16 are taken to the admission by the Court of the testimony of Dr. Nicholson and Cordon, in contradiction of plaintiff's witness Nelson. Upon the trial, Nelson testified that he saw intestate when he was upon the car, and that he seemed to be sober; and to impeach him, Dr. Nicholson and Cordon were introduced to show that Nelson told them that Cogdell was so drunk he looked curiously out of his eyes on the morning of the accident. Dr. Nicholson testified that he reduced to writing and read over to Nelson that which Nelson told him concerning intestate's condition, and, after hearing it read, said it (the statement) was all right, but did not sign it. And Cordon testified that he wrote down what Nelson told him to the same effect. His Honor permitted the witnesses to testify from their recollection, and allowed them to refresh their memories from the writings. Plaintiff insisted that the written statements should be introduced as the best evidence, and objected to the oral testimony. We think his Honor properly excluded the writings or memoranda, and allowed the witnesses to testify from their recollections thus refreshed. The writings, or written statements, were not signed by Nelson; they were simply declarations made by them, and being hearsay could serve no purpose except as memoranda from which it was permissible for them to refresh their memories.

The record fails to show any evidence that intestate used the apron to stand upon, or that he used it in any way, or that it was needful or useful for any purposes other than to prevent coal from falling overboard and for laborers to stand upon. Therefore, it is not necessary to discuss the charge or prayers for instruction concerning its use or the assumption of risk by intestate with reference to it. No defect

was apparent, and its unsoundness was only discoverable after it had been broken. But we have carefully reviewed the charge and prayers as to those matters, and fail to find any error prejudicial to plaintiff.

Defendant contends that intestate's death was caused by his own negligence in going upon the car of coal in an intoxicated condition, by reason of which he was unable to maintain himself upon the car and fell off upon the apron and broke through into the river, which resulted in his death, and his negligence being concurrent with its, plaintiff can not recover. Relating to the charge of his Honor upon this contention (and his refusal to give instructions prayed for), we fail to find any error. The substance of the charge upon this phase of the case is contained in the following part thereof: "If the jury should believe from the evidence that Cogdell was intoxicated and fell from the car, then his condition would not necessarily affect plaintiff's' right to recover in this case, unless such intoxication substantially and essentially contributed to his death. Intoxication is not negligence of itself, but is only evidence of negligence. * * * If deceased voluntarily drank liquor and thereby became intoxicated so that his usual faculties were temporarily impaired, or his capacity to perform his ordinary work with safety was impaired, then such condition was due to himself, and if injured by reason thereof it would be negligence. If the deceased voluntarily incapacitated himself from exercising ordinary care by drinking liquor, and while in this condition got on the coal car for the purpose of unloading the same, and by reason of his intoxicated condition fell off the car, you will find that the deceased was negligent and contributed to his own death; and you will answer the second issue 'Yes.' That the evidence in this case does not present any element of the 'last clear chance' on the part of the defendant to have prevented

the deceased from falling into the water." (Exceptions 26, 27 and 28.)

Plaintiff requested his Honor to charge the jury "That the law presumes that a person found dead and killed by the alleged negligence of another has exercised due care himself." Which was refused, but in lieu thereof his Honor charged "that an inference arises from the instinct of self-preservation that a person killed has exercised due care himself," to which plaintiff excepted. (Exception 38.) Also, "that if the deceased did not know, or could not have discovered by ordinary inspection, that the apron was constructed of unsound planks, and if apparently it was strong enough to bear his weight, if he fell from the car, and to roll him off on the platform, then it would not be contributory negligence for him to have gone on top of the car to unload it, or to have fallen therefrom. The deceased was not required to know an unseen and hidden defect in the apron not discernible by ordinary inspection." This prayer his Honor gave, but inserted after the word "therefrom" and "the," "unless the fall was the result of want of care." To which insertion or modification the plaintiff excepted. (Exceptions 21 and 34.) Plaintiff further asked the Court to charge that "If the jury should believe, from the evidence, that deceased was intoxicated, and by reason thereof fell from the car on the apron, and that the apron would have sustained his weight and rolled him upon the platform if it had been built of sound material, and the deceased did not know of such unsoundness, and could not by reasonable inspection have discovered the same, then his intoxication and his fall from the car would not be the proximate cause of his death, but the proximate cause would be the defective apron," which was also refused and excepted to. (Exception 34.)

The exceptions taken above can not be sustained. It is contended with great zeal that his Honor erred in refusing to

instruct "that the law presumes that a person found dead and killed by the alleged negligence of another has exercised due care himself." (Exception 38.) This would be true as an abstract proposition of law, in casting the burden of proving *want of care* upon the defendant. But that presumption is now incorporated in our statute (Acts 1887, Chap. 33), which *expressly* imposes the burden of proof upon the defendant who sets up contributory negligence as a defense; and it appears from the case on appeal that his Honor properly instructed the jury as to this burden: "After recapitulating the evidence and *stating the rule as to the burden of proof* and the contentions of the parties, the jury were instructed by the Court as follows." (The italics being ours.) Having stated the rule (which must have been correctly done, as there is no exception), it was unnecessary for the Court to give any instruction as to the presumption.

Failing to find any substantial error prejudicial to the plaintiff, the judgment of the Court below must be

Affirmed.

DOUGLAS, J., dissenting. This case is before us the second time, having been reported in 124 N. C., 302.

As the jury has found the defendant guilty of negligence, and the defendant has not appealed, we need not consider that phase of the case.

The contributory negligence of the intestate, with the evidence bearing thereon and the instructions relating thereto, is alone before us. The general construction of the wharf, platform and apron not set out in the former opinion.

The witness Langley testified that he was familiar with the locality, having worked there at one time, and that he went there immediately after the accident. He then fully described the condition of the apron; how it was constructed

and used; the length, breadth and thickness of the plank com-
posing it; how and where it was broken; and its general ap-
pearance, both before and after the accident.    He further
stated that he had known the intestate for twenty years; that
they usually worked together; that he saw him just before he
was drowned, and saw his body when it was taken out of the
river.    All this was of his own personal knowledge.

He was then asked by the plaintiff: "If this plank of the
apron had been sound, and not cedar-hearted or rotten, could
a man of Cogdell's weight and size have stood on it with
safety and thrown off the lump coal or fallen on it from the
top of the car without its breaking under him?"    This ques-
tion was excluded upon objection of the defendant.    In such
exclusion I think there was error.    The plain object of the
question was to show that it was not contributory negligence
for a man of ordinary prudence to trust his weight to an
apron which would have been entirely safe but for a hidden
defect which he had no means of ascertaining.    This is not
expert testimony.    It is the conclusion of the witness as to a
matter of common knowledge, based upon facts within his
personal observation immediately after the accident.    There-
fore, I think it comes within the rule laid down in *State v.
Reitz,* 83 N. C., 634, where this Court, by ASHE, J., says:
"The first exception to the admissibility of evidence was to
the admission of the testimony of a witness who testified it
was his best opinion that certain tracks found near the site
of the burnt building were those of the prisoner.    The re-
ception of this evidence was objected to on the ground that the
witness was not an expert.    It is not necessary that a witness
should be an expert to testify to the identification of tracks.
The correspondence between boots and footprints is a matter
requiring no peculiar knowledge to judge of, and as to which
any person who has seen both may testify.    His testimony
in such a case can amount to nothing more than his opinion

as to the correspondence. Though the opinions of witnesses are, in general, not evidence, yet on certain subjects some classes of witnesses, as, for instance, experts, may express their opinions; and on certain other subjects any competent witness may express his opinion or belief. * * * The bare opinion of a witness as to the identity of the tracks should have no weight with a jury; but when a witness gives his reasons for entertaining the opinion, the whole of the testimony should be allowed to go to the jury for them to say whether the grounds of the opinion are reasonable and satisfactory." This case is evidently not in conflict with *Phifer v. Ry.*, 122 N. C., 940, nor intended to be overruled thereby, as in that case this Court says, on page 942: "We have no direct authority in our own Reports on the question raised here." The Court, stating the point involved, further says, on page 941: "It seems to us that whether the plaintiff was careful was the very question which the jury were impanelled to determine, the defendant having pleaded contributory negligence and introduced testimony tending to prove it." In the later case of *Burney v. Allen*, 127 N. C., 476, it was held competent, upon an issue of *devisavit vel non*, for a witness to give his opinion that, from his personal knowledge of the room and the location of the furniture, the testator could have seen the subscribing witnesses as they signed the will, if the testator was lying in the position testified to by other witnesses on the trial. This Court says, on page 479: "This is rather the statement of a physical fact than the expression of a theoretical opinion, and seems clearly to come within the rule laid down in *Arrowood v. Railroad,* 126 N. C., 629, 632."

In the case at bar, the safety of the apron was not the essential fact at issue, but was in the nature of a circumstance or relative fact, tending to prove or disprove the principal fact of contributory negligence. 1 Greenleaf Ev., Secs. 440, 440a. Of the same general nature was the defendant's testi-

mony as to the intoxication of the intestate. Witnesses for
the defendant testified that they thought the intestate was
drunk, but none of them saw him drinking and some of
them did not even give any reasons for their opinion. This,
however, does not appear to have been excepted to.

The general rule is that the opinions of witnesses are not
admissible, but there are many exceptions to this rule, both
as to expert and non-expert testimony, arising from necessity
and the increasing tendency of modern Courts to keep in view
rather the ascertainment of the truth than the mere exclusion
of error in the admission of evidence.

A non-expert witness was permitted to give his opinion in
the following cases, among others: As to insanity, in *Clary
v. Clary,* 24 N. C., 78; *Barker v. Pope,* 91 N. C., 165; *Mc-
Rae, v. Malloy,* 93 N. C., 154; *State v. Coley,* 114 N. C.,
879; *Smith v. Smith,* 117 N. C., 326. As to the presence of
negro blood, in *Hopkins v. Bowers,* 111 N. C., 175; *Hare v.
Bd. Education,* 113 N. C., 9. Under the circumstances of
this case, I think the question was competent.

There are a large number of exceptions, the majority of
which refer to the first and third issues, and are therefore not
essential. Of those referring to the second issue, some come
under the rule herein laid down and are governed thereby;
of the others, many may not occur on a second trial, and need
not be now discussed.

I think that the issue as to contributory negligence was
properly submitted; but there is one exception to the charge
relating thereto that should be sustained.

The plaintiff requested the Court to charge: "That the
law presumes that a person found dead and killed by the al-
leged negligence of another, has exercised due care himself."
This instruction should have been substantially given, but
was refused. In lieu thereof, the Court charged as follows:
"An *inference* arises from the instinct of self-preservation

that a person killed has exercised due care himself." There
is an essential difference between "inference" and "presump-
tion." An inference may be drawn from almost any com-
petent evidence, but a presumption carries with it the burden
of proof. No one saw the intestate fall, and there is no di-
rect evidence, positive or circumstantial, tending to prove
contributory negligence. It is true there is evidence pro and
con as to the alleged intoxication of the intestate; but intoxi-
cation is not contributory negligence *per se,* and becomes so
only when it directly contributes in causing the injury. Of
this there was no evidence. The most that can be said is that
the intoxication of the intestate, if believed by the jury, was
a mere circumstance from which contributory negligence
might possibly be inferred. Whether such a possible infer-
ence, of whose existence and weight the jury alone could de-
termine, was sufficient to overcome the legal presumption
against the existence of contributory negligence, was a ques-
tion for the jury; but they should have been instructed that
there was such a presumption.

Whatever doubt may have formerly existed as to the burden
of proving contributory negligence, was completely settled by
Chapter 33 of the Public Laws of 1887, of which Section 1
is as follows: "That in all actions to recover damages by rea-
son of the negligence of the defendant, where contributory
negligence is relied upon as a defense, it shall be set up in the
answer and proved on the trial." This act, which is gener-
ally regarded as having been caused by the decision of this
Court in Owen's case, 88 N. C., 502, lays down the law as
followed by the Courts of the United States, of England, and
of thirty-five out of the forty-five States of the Union. Shear.
and Red. Neg. (5th Ed.), Sec. 109; Thompson Neg., 1176;
Thompson Car. of Pas., 257, *et seq.;* Wharton Neg., Sec. 423;
Redfield on Railways, Sec. 253, and notes; *Prideaux v. City,*
43 Wis., 513; 28 Am. Rep., 563, Browne's Note; 62 Am.
Dec., Freeman's Note.

It is generally recognized that the burden of proof carries with it the presumption. Lawson Pres. Ev., page 133, Rule 19d. Of the numerous cases, I will quote only a few, italicizing such parts as peculiarly emphasize the point in question:

In *Cox v. Railroad,* 123 N. C., 604, 610, this Court says: "The negative *presumption* necessarily accompanies the burden, and remains until the burden is lifted or shifted by direct admissions or a preponderance of proof."

In *Norton v. Railroad,* 122 N. C., 910, 928, this Court says: "There is never any presumption of contributory negligence, as self-preservation is the first instinct of humanity. Where there is no evidence of the fact, the *presumption is against contributory negligence,* even in the absence of any statute like our own, making it a matter of affirmative defense."

In *Texas, etc., Ry. v. Gentry,* 163 U. S., 353, the Supreme Court of the United States says, on page 366: "As already stated, no one personally witnessed the crossing of the track by the deceased, nor the running of the flat car over him. Whether he did or did not stop, and look, and listen for approaching trains, the jury could not tell from the evidence. *The presumption is that he did,"* citing *Continental Imp. Co. v. Stead,* 95 U. S., 161, 164, and *B. and O. Railroad v. Griffith,* 159 U. S., 603, 609.

In *Railroad v. Chisholm,* 83 Fed. Rep., 652, the Court (U. S. Circuit Court of Appeals) says, on page 656: "The law does not presume negligence, but it *presumes,* until the contrary is shown, that everyone in a given situation *will act, and has acted, prudently,* and with a due regard for his own safety."

In *Schum v. Pa. Ry.,* 107 Pa. St. 8, 52 Am. Rep., 468, the Court says, on page 12: *"The common law presumption is that everyone does his duty until the contrary is proved,* and in the absence of all evidence on the subject, the presumption

is that the decedent observed the precautions which the law prescribed."

In *Crumpley v. Ry. Co.*, 111 Mo., 152, the Court says, on page 158: "Contributory negligence is an affirmative defense, which the party alleging it is required to prove; and in this case the burden was on defendant to show that deceased did not exercise care. In the absence of proof to the contrary *the presumption* is that he was at the time in the exercise of care and diligence."

In *Smith v. Railroad,* 4 South Dakota, 71, the Court says: "In the absence, therefore, of any evidence upon the subject, it would be the duty of the Court to *assume* that the plaintiff was *not* guilty of contributory negligence."

In *McBride v. Railroad Co.,* 19 Ore., 64, the Court says, on page 58: "In the case at bar, no witness was called who saw the occurrence. There is no evidence whatever whether the decedent in fact did stop and look and listen. *The presumption is that he did;* proof of that fact was no part of the plaintiff's case."

In *Mynning v. Railroad Co.,* 64 Mich., 93, 8 Am. St. Rep., 804, the Court says, on page 102: *"The presumption of law is that the person killed at a crossing did stop and look and listen, and will prevail in the absence of direct testimony on the subject."*

It will appear from the above quotations, each taken from a different State, and representing a line of authorities, that there is a uniform legal presumption, not only that the decedent was not guilty of any *active* negligence, but also that he took all the precautions for his own safety required by law.

This presumption is rebuttable, but, as was said in *Cox v. Railroad, supra,* it "remains until the burden is lifted or shifted by direct admissions or a preponderance of proof." There was clearly error in the Court below refusing to give the instruction as requested by the plaintiff.

COGDELL *v.* RAILROAD.

The above opinion was written tentatively as my view of the law.

There is another serious error in the opinion of the Court. It practically admits that the plaintiff was entitled to his prayer as to the presumption of due care on the part of the intestate, but intimates that this has become an abstract proposition, because the Statute of 1887 *expressly* imposes the burden of proof of contributory negligence upon the defendant. It clearly seems to me that the statute is an additional reason why the prayer should have been given. Again, the Court seems to hold that because the record states inferentially that the Judge below "stated the rule as to the burden of proof" that there is a presumption that he stated it correctly, and that this presumption cures all exceptions to his refusal to give prayers which are in themselves correct. In other words, the Judge below can, in his discretion, properly refuse all prayers and justify such refusal upon the bare statement in the record that he had "stated the rule," or "properly charged" upon the points raised by such prayers. This rule would practically destroy the value of an appeal, as it would take away from this Court the power of passing upon the essential question. When there is an exception to the charge, or the refusal to charge, of the Court below, it is for this Court to say whether there is error; and when a material prayer is refused, it must appear to us affirmatively from the record, either that such prayer was in itself erroneous, or that it was substantially given in the charge. This has been expressly decided.

The Court seems to take it for granted the jury found the issue of contributory negligence on the ground of intoxication. Where have the jury said so? Not in their verdict, for they found simply that the deceased was guilty of contributory negligence. This finding may have been based upon the deceased standing upon an apron that was not intended

for any such purpose, as was strenuously contended by the defendant. His Honor, after charging upon the first issue as to the assumption of risk, in case the apron was constructed and used solely to prevent coal from falling overboard, added the following words to his charge upon the issue of contributory negligence: "These instructions are also given subject to the instructions just given with reference to the apron's sole use." This would naturally lead the jury to believe that they must consider the question of assumption of risk upon both issues. Hence, arises the importance of the excluded evidence discussed in this opinion, but not alluded to by the Court. If we must find the facts, there seems to be but one rational conclusion to be drawn from the evidence as to the manner of intestate's death. He was evidently letting himself down from the car, and scraped the side of the car with his toe as he swung down. He let go his hold when he landed upon the apron, which immediately broke beneath him. He then grabbed for the top of the car, but failed to reach it, and scratched the side of the car with his finger-nails as he went down. He must have been facing the car or he could not have scratched it with his finger-nails, and he could not have scratched it with both his fingers and his heel at the same time. He must have gone down in an upright position or he could not have gone through the narrow opening between the platform and the car. He could not have gone down head foremost, as there is no conceivable way by which he could have gotten into that position. Therefore, he must have gone down feet foremost. If he had rolled off the car he could not have scratched the car so far down the side, and, in all probability, would have rolled over on to the platform without touching the car. If he had "pitched off" the car, either backwards or forwards, his hand would have been away from the car and he would necessarily have fallen on the platform. A man six feet high falling *across* an opening only two feet

COGDELL *v.* RAILROAD.

wide, can not possibly go through it. The greater part of his body would inevitably strike the platform. The fact that the apron was broken off only at one end shows that his weight must have been concentrated at that point. This idea was evidently in the mind of the Coroner, Dr. Tayloe, who was a very intelligent witness. He testified, in part, as follows: "I saw marks on the side of the car beginning within a few inches of the top and going down perpendicularly the full extent of the car. They looked like the man had tried to catch as he went down. * * * The scratches showed that the man must have been grasping at the car as he slipped from it. * * * The same impressions might have been made by a man accidentally falling off or by a man getting down from the car." Taking all the circumstances together, the scratches upon the car, the breaking of the apron at one end, and a large man falling through the small opening, all tend to prove that he fell in the manner I have described. No other theory would be consistent with *all* the admitted facts. If this is true, the breaking of the apron was the proximate cause of the injury, and hence the vital importance of the excluded testimony as to the condition of the apron, and the direct application of the prayer as to the presumption of care. Moreover, the above undisputed facts are inconsistent with the theory of drunkenness. It is common knowledge that when a drunken man falls he does so from a *relaxation* of the muscles. The extreme muscular tension necessary to hold a man's fingers against the car with sufficient force to scrape it from top to bottom would be impossible in a state of intoxication.

I can not concur in the opinion of the Court.

CLARK, J., concurs in the dissenting opinion.