S. H. TROXLER v. SOUTHERN RAILWAY CO.

(Decided March 21, 1899).

*Railroads—Damages—Negligence—Defective Appliances— Injury to Employee—Automatic Car-couplers.*

1. Reason, justice and humanity, principles of the common law, irrespective of Congressional enactment and Interstate Commerce Commission regulation, require the employer to furnish to the employee safe modern appliances with which to work, in place of antiquated, dangerous implements, hazardous to life and limb, and the failure to do so, upon injury ensuing to the employee, is culpable, continuing negligence on the part of the employer, which cuts off the defense of contributory negligence and negligence of a fellow-servant—such failure being the *causa causans.*

2. It is negligence, *per se*, in any railroad company to cause one of its employees to risk his life and limb in making couplings which can be made automatically without risk.

Troxler *v.* Railway Co.

Civil Action to recover damages for personal injury, alleged to have been occasioned by the negligence of defendant, tried before *Timberlake, J.,* at August Term, 1898, of Guilford Superior Court.

This is the same action in which there was a former trial and appeal, reported in 122 N. C., 902. The plaintiff was a brakeman on a through freight train of the defendant company, and by direction of the conductor undertook to couple two cars, which were not furnished with automatic couplers. He used first a stick, and failing with that, used his hand, but in the effort, owing to the rebound, his hand got caught between the deadblocks and was so badly crushed that it had to be amputated.

In the light of the former trial his Honor declined to submit an issue as to whether the plaintiff was injured by the negligence of a fellow-servant, informed the jury that this Court had decided that railroad companies should use automatic couplers or other safe coupling appliances in general use, and that the true question was whether the plaintiff was injured by the defective appliances with which the coupling of the cars was to be made—the use of such as were defective and dangerous would be negligence in the company, it being their duty to furnish safe appliances to their employees.

The defendant excepted to the refusal of his Honor to submit the issue as to the negligence of a fellow-servant, and to the charge relating to negligence of the defendant. There was verdict and judgment for plaintiff. Appeal by defendant.

*Mr. F. H. Busbee,* for defendant (appellant).
*Messrs. C. M. Stedman* and *D. Schenck, Jr.,* for plaintiff.

Clark, J. The plaintiff was injured in attempting to couple cars of the defendant on which there were no auto-

matic car-couplers, but in lieu thereof skeleton draw-heads of unequal height. The Court below held that the absence of automatic couplers, in general use, was negligence, *per se,* and refused to submit an issue whether the injury was not caused by the negligence of a fellow-servant, and refused to instruct the jury, as prayed, that the plaintiff was guilty of contributory negligence if he could by proper care have coupled the cars by hand without accident.

The duty to furnish proper and safe appliances is that of the common master, and injury caused by their absence can not be atributed to the negligence of a fellow-servant. *Troxler v. R. R.,* 122 N. C., 902; *Wright v. Railway, Ibid,* 959. It has been heretofore held in *Greenlee v. Railroad,* 122 N. C., 977, that failure of a railroad company to equip its freight cars with modern self-coupling devices is negligence, *per se,* continuing up to the time of an injury sustained by an employee in coupling cars by hand, and renders the company liable, whether such employee was negligent in the manner of making the coupling, or not. The same ruling had been previously made as to the duty of furnishing automatic car-couplers on passenger trains in *Mason v. Railroad,* 111 N. C., 482, decided in 1892. Where the negligence of the defendant is a continuing negligence (as the failure to furnish safe appliances, in general use, when the use of such appliances would have prevented the possibility of the injury,) there can be no contributory negligence which will discharge the master's liability. This has been repeatedly held. *Norton v. Railroad,* 122 N. C., 911; *McLamb v. Railroad, Ibid,* at p. 873; *Cone v. R. R.,* 81 N. Y., 206. The failure to provide the necessary appliances is the *causa causans.* The defendant, however, frankly asks us to reconsider and overrule *Greenlee's case.* That case was the expression of no new doctrine, but the affirmation of one

as old as the law, and founded on the soundest principles of justice and reason, to-wit: That when safer appliances have been invented, tested and have come into general use, it is negligence, *per se,* for the master to expose his servant to the hazard of life or limb from antiquated and defective appliances which have been generally discarded by the intelligence and humanity of other employers. *Witsell v. Railroad,* 120 N. C., 557. This must be so, if masters owe any duties to their employees, and unless economy of expenditures on the part of the railroad management is to be deemed superior to the conservation of the lives and limbs of those employed in their operation.

In the Twelfth Annual Report of the Interstate Commerce Commission (1898), published by authority of the United States Government, upon returns made by the railroad companies themselves, it is stated (at p. 88): "Since the enactment of the law in 1893 (requiring automatic couplers) there has been a decreasing number of casualties. There were 1,034 fewer employees killed and 14,062 fewer injured during the year ending June 30, 1897, than during the same period in 1893. The importance of this subject will be realized when the yearly casualties to railway employees are compared with those which occurred during the recent war. In the Spanish-American War there were 298 killed and 1,645 wounded. In 1897 there were 1,693 men killed and 27,667 injured from all causes in railway service. From coupling and uncoupling cars alone 219 less were killed and 4,994 less were injured in 1897 than in 1893, when the law was enacted. The number of such employees killed has been reduced one-half, and the number of injured also practically reduced one-half. The reduction in the number of accidents from all causes largely exceeded (by nearly three to one) in a single year the entire casualties resulting from the prosecution of the late war."

TROXLER *v.* RAILWAY CO.

Thus in four years—from 1893 to 1897—notwithstanding the increase of thousands of miles of railways, and many thousands of employees, and the further fact that the railroad corporations have been able to procure from the Inter-State Commerce Commission an extension of the time at which the law of Congress, imposing a penalty for operating any cars without self-couplers, will come into force, the shadow of the law has procured so general an attachment of these self-couplers, that 5,213 fewer employees were killed and wounded in coupling and uncoupling cars in 1897 than in 1893. Can it, therefore, be seriously contended that the absence of such safety appliances is not negligence *per se,* rendering the railroad company liable for damages? As these appliances have been patented, and more or less in use for over thirty years, it should not have required an act of Congress to enforce their universal adoption. Failure to adopt them, after being so long and widely known and used, was negligence in the defendant, upon the principles of the common law. *Witsell's case, supra.* The Act of Congress imposing a penalty for failure to add the appliances after January 1, 1898, in no wise affected the right of any employee to recover for damages, sustained by the negligence of any railroad company to attach them. The action of the Inter-State Commerce Commission, in extending the date at which such Act should come into force (by virtue of authority given in the Act) could not set aside the principle of law that failure to adopt such appliances was negligence *per se,* nor have any other effect than to postpone the date at which the United States Government would impose the prescribed penalty upon all railroads engaged in inter-state commerce failing to equip all their cars with automatic couplers, a penalty which is imposed irrespective whether any accidents occur from such failure or not.

124—13

TROXLER *v.* RAILWAY CO.

The indifference of railroad companies shown in not adopting these life and limb saving appliances is all the greater, since their cost is comparatively small. Indeed the Inter-State Commerce Commission, in the above-cited Report (page 89), state that, considering the less expense required in repairs, they are an actual saving. They say: "Figures submitted by one of the leading railroad companies indicate that the adoption of the automatic coupler will result in saving a very large sum annually, in comparison with the expense incurred in former years, in applying and maintaining the link-and-pin type; and this does not take into account the reduced cost to the roads, which must result from fewer suits for damages by injured employees. And further, that there being too much slack in the old pin-and-link for the brake to act economically or successfully, the automatic coupler makes the requirements of railroad operation better, as well as minimizes the danger to employees."

In *Witsell v. Railroad,* 120 N. C., 557 (at p. 562), it is said: "If an appliance is such that the railroads should have it, the poverty of the company is no sufficient excuse for not having it." But not only, as above, the use of self-couplers would be an actual economy to the defendant, but that it is amply able to put on these appliances, if it were not, is shown by the published report of the defendant company that its gross earnings for the year 1895 (when this injury was inflicted) were over seventeen millions of dollars, and its net earnings, over and above all expenses, were more than five millions of dollars (Poor's R. R. Manual, 1898, p. 792)— figures which for the year just past have risen to over twenty-two millions dollars gross earnings and over seven millions three hundred thousand dollars nett earnings.

With such an array as above of the terrible cost of life and limb by failure to use appliances to avoid coupling and un-

TROXLER *v.* RAILWAY CO.

coupling cars by hand (in doing which the plaintiff was injured), and the small expense, nay actual economy of adopting them and the ample means the defendant possesses, we can not reverse our ruling in *Greenlee's case,* that it is negligence *per se* in any railroad company to cause one of its employees to risk his life or limb in making couplings which can be made automatically without risk.

This matter of requiring these great corporations to protect the travelling public, and their employees as well, by the adoption of all safety appliances which have come into general use, is so important that we have gone into the subject at this length. Ordinarily owned by great syndicates out of the State in which they operate, and their management at all events removed from subjection to that sound public opinion which is so great a check upon the conduct of individuals and of government itself, the sole protection left to the traveller and the employee alike is the application of that law which is administered impartially, and which can lay its hand fearlessly upon the most powerful combination and protect with its care the humblest individual in the land.

The subject is one of transcendent importance, for notwithstanding the partial adoption of these appliances and consequent reduction in casualties, the Twelfth Inter-State Commerce Commission shows (p. 77) that for the year ending June 30, 1897, on the railroads engaged in inter-state commerce (which alone report to that commission), there were still 43,168 casualties, of which 6,437 resulted in death. Of these 1,693 killed and 27,667 wounded, were railroad employees, among whom 214 were killed and 6,283 wounded in coupling or uncoupling cars. In our own State, the Report of the North Carolina Railroad Commission for 1898 (p. 250—1) shows that for the year ending June 30, 1898, the railroads reported 879 persons killed and wounded (of

whom 99 were killed) and of these, 23 of the killed and 599 of the wounded were employees: total, 622. As, of the 9,000 employees reported in this State, 4,000 (according to the usual ratio) were employees engaged in the actual operation of the trains, it follows that in this State one such employee in every 6½ was in that year injured or killed. In view of such mortality, rivaling that of the bloodiest wars, this Court can not reverse its declaration heretofore, which is sustained by every sentiment of justice and humanity, that where a life and limb saving appliance, like automatic carcouplers, has come into general use, and its partial adoption has in four years, notwithstanding the increase in railroad mileage and employees, decreased the injuries and deaths from coupling cars one-half, that the failure to adopt and use it is negligence *per se.*

Considering the economy in money of using such appliances, as well as the ample revenues of the defendant, it is passing strange that it (or any other railroad company) should have delayed till now, or even till 1895, to protect the lives and limbs of their employees in this particular, or that there should have been need of an Act of Congress or the verdict of a jury to stimulate considerations of humanity towards their patrons and their employees.

Counsel for defendant read, as part of his argument, a clipping from a newspaper, and repeats in his brief, that a noble English Lord who was a railroad manager as well as an hereditary member of Parlament, had changed his party affiliations because the one to which he had belonged had advocated the enforced adoption of self-couplers upon English railways. That simply shows that one such manager at least possesses a lordly disregard for the thousands of deaths and injuries of employees yearly, caused by the lack of safety appliances, and, it may be, there are others who entertain

sentiments of higher allegiance to the nett earnings of the syndicates that employ them than to those great principles which every political party professes to advocate, as being for the best interests of the public. But the hostility of one or more railway managers towards the matter can not affect the impartial enforcement of the sound legal principle, that employees and the travelling public alike have a right to be protected against any dangers which can be avoided by the adoption of safety appliances which have been tested by experience and which have come into general use.

In the present case, the defendant has the less excuse because there was uncontradicted testimony not only that automatic car-couplers were in general use at the time of the inury (March, 1895,), but that the skeleton draw-heads, in attempting to make a coupling with which the plaintiff was injured, were defective in that they were of different heights from the ground and evidence that the cars could not have been coupled with a stick or in any other manner, except by hand.