MARKS v. COTTON MILLS.

(Filed May 3, 1904).

1. NEGLIGENCE—*Evidence—Master and Servant.*

In an action for injuries to a servant whose hand was caught in open cog-wheels, testimony that the cog-wheels should have been covered was incompetent.

2. NEGLIGENCE—*Evidence—Master and Servant.*

In an action for injuries to a servant whose hand was caught in open cog-wheels, evidence that he had seen one machine with such cogs boxed in is not competent.

ACTION by W. H. Marks against the Harriet Cotton Mills, heard by *Judge O. H. Allen* and a jury, at October Term, 1903, of the Superior Court of DURHAM County. From a judgment for the plaintiff, the defendant appealed.

*Guthrie & Guthrie,* for the plaintiff.
*Winston & Bryant,* for the defendant.

WALKER, J.  The plaintiff brought this action to recover damages for injuries alleged to have been caused by the defendant's negligence.   He alleges that the defendant employed him to operate one of the machines in its cotton mill, called a speeder, and that he was ordered by the boss or foreman to clean the machine while it was running; that the cog-wheels of the speeder were not boxed or cased as they should have been, and that owing to its condition it was dangerous to run the machine at a great speed, as was done by the defendant while the plaintiff was cleaning it, all of which was unknown to him, as he was an inexperienced hand and had not been warned of the danger or instructed how to avoid it.   The excessive speed and the exposed condition of the cogs caused the plaintiff's hand to be caught in the wheels and severely injured.

In order to prove the unsafe condition of the machine, the plaintiff introduced as a witness Ola Woodlief, who was permitted to testify, notwithstanding the defendant's objection, that the cog-wheels should have been covered or encased. Similar testimony was permitted to be given by other witnesses.   It is only necessary that we should consider the competency of this testimony, as our opinion in regard to it is adverse to the plaintiff who recovered the judgment below, and the other matters may not be presented at the next trial, if there is one.   The defendant's motion to nonsuit, which was denied by the Court, and to which ruling exception was taken, presents a question which calls for a most careful consideration.   As the facts may be varied if the case is tried again, we refrain from expressing any opinion upon that ruling, lest one or the other of the parties may be thereby prejudiced.

MARKS v. COTTON MILLS.

It may be stated as a rule, which is of course subject to exceptions, though this case is not within any of them, that a witness can testify only to facts, and it is left to the Court and the jury to draw inferences and conclusions and to form opinions from the facts to which the witness testifies. He should not be permitted to express his opinion upon the very questions to be determined by the jury under instructions from the Court. This case furnishes a striking illustration of the wisdom of the rule. If the witness is allowed to testify that the cog-wheels should have been covered, it will be seen that what he says is the full equivalent of an opinion that the defendant was guilty of negligence. It was in substance the same as if he had testified that the accident would not have occurred if the cogs had been encased, and that the defendant therefore did not do what under the circumstances it should have done. If this is not a substantial declaration by the witness that the defendant was negligent, it is barely one degree removed from it. The witness, in our judgment, was permitted to invade the province of the Court and the jury in thus testifying. A witness should state facts, the jury should find the facts, and the Court should declare and explain the law. The functions of the three within their several spheres are clearly defined and should always be kept separate and distinct. Whether the speeder was so constructed as that its operation was safe to the defendant's employees, was the very question upon which the parties were at issue and which the jury were impaneled to decide. The witness' opinion upon that question was incompetent and the plaintiff's objection to it should have been sustained. Authorities in support of this ruling are abundant. We need cite only a few of them: *Tillett v. Railroad,* 118 N. C., 1031; *Wolf v. Arthur,* 112 N. C., 691; *Smith v. Smith,* 117 N. C., 328; *Summerlin v. Railroad,* 133 N. C., 550; *Burwell v. Sneed,* 104 N. C., 118; *Cogdell v. Railroad,* 130 N.

C., 313; *Cogdell v. Railroad,* 132 N. C., 852; *Harley v. B. C. M. Co.,* 142 N. Y., 31.

The witness Robertson, who also testified that the machine "should have been boxed," was permitted in addition to say, after objection by the defendant, that "he had seen an intermediate frame with these cogs boxed up." This was also incompetent. The employer does not *guarantee* the safety of his employees. He is not bound to furnish them an absolutely safe place to work in, but is required simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best known machinery, implements and appliances, but only such as are reasonably fit and safe and as are in general use. He meets the requirements of the law if, in the selection of machinery and appliances, he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the employer liable, not a mere error of judgment. We believe this is substantially the rule which has been recognized as the correct one and recommended for our guide in all such cases. It measures accurately the duty of the employer and fixes the limit of his responsibility to his employees. *Harley v. B. C. M. Co., supra.* This Court has said that all machinery is to some extent dangerous, but the fact that it is dangerous does not of itself make the owner liable in damages. It is the negligence of the employer in not providing for his employees safe machinery and a reasonably safe place in which to work that renders him liable for any resulting injury to them, and this negligence consists in his failure to adopt and use all approved appliances which are in general use and necessary to the safety of the employees in the performance of their duties, and this rule applies, it is said, even as between carrier and passenger. *Witsell v. Railroad,* 120 N. C., 557; *Dorsett*

*v. Mfg. Co.,* 131 N. C., 254. If the employer is required to adopt every new appliance as soon as it is known and approved, but before it has come into general use, it would involve upon him the duty, at his peril, of securing at once the latest and best of all appliances which, as also said by this Court, would be too great a burden to impose upon him, even though the safety of the employee would be thereby enhanced. *Witsell v. Railroad, supra.* The rule which calls for the care of the prudent man is in such cases the best and safest one for adoption. It is perfectly just to the employee and not unfair to his employer, and is but the outgrowth of the elementary principle that the employee, with certain statutory exceptions, assumes the ordinary risks and perils of the service in which he is engaged, but not the risk of his employer's negligence. When any injury to him results from one of the ordinary risks or perils of the service, it is the misfortune of the employee and he must bear the loss, it being *damnum absque injuria;* but the employer must take care that ordinary risks and perils of the employment are not increased by reason of any omission on his part to provide for the safety of his employees. To the extent that he fails in this plain duty, he must answer in damages to his employee for any injuries the latter may sustain which are proximately caused by his negligence.

The testimony of the witness that he "had seen a frame with the cogs boxed up" was admitted in violation of the rule we have just stated, as it was equivalent to saying that the defendant had not adopted the best appliances for safety, though there was no proof that they were in general use. The testimony as given was collateral to the issue. It is suggested that the plaintiff could not begin to prove the fact that the boxed machines are in general use unless this kind of testimony is admissible. This reason for admitting the testimony is more apparent than real, and we do not think

it is at all sound.   A point presented in a case should not be decided as an abstract proposition, but with reference to the facts and actual state of the case.   The question and answer were not excluded but admitted in this case, and there was no additional evidence offered by the plaintiff tending to show that cog-wheels in mills, other than the one mentioned by the witness, are boxed.   The plaintiff perhaps might have shown that boxes were in general use by proving that a number of mills used them, but this he did not attempt to do.   He had the full benefit of the right to begin his proof, and did begin it, but failed to complete it.   If the fact that the speeders are boxed in one mill is proof of the general usage to that effect, then the evidence was properly admitted.   But can it be successfully contended that it is any evidence of such general usage?   There can be but one answer to this question.   General usage cannot be established by proof of isolated . instances, and certainly not by one instance.   It would be unsafe to test the degree of care required of the defendant by proof of what some other person may have done.   The latter is not shown to be the ideally prudent man, whose care is the standard for our guidance and whose example may always be followed.   Another reason suggested in support of the admissibility of this evidence would require the employer to guarantee the safety of his employee, as it is said he should box the speeder because there is less danger when the cogs are not exposed.   This is a clear departure, we think, from the rule of responsibility in such cases.   If the employer should be required to do everything necessary to free his machine from all danger to his employees, there would be no such thing as the assumption of risk, for there would be no risk to assume.   The argument in behalf of the admissibility of the evidence that there is less danger in speeders which are boxed than in those which are not boxed, leads to the conclusion that all speeders

MARKS *v.* COTTON MILLS.

should be boxed, without regard to the degree of care required of the employer. Again, whether the general use of a certain device for the safety of employees can be proved by the testimony of different witnesses that it is used in a number of mills, as well as by that of one witness who can speak of his personal knowledge in regard to such general use, is quite a different question from the one we have in this case, which is whether it was proper to let the jury hear and consider evidence as to its use in only one mill. If the evidence was competent for the purpose of beginning the plaintiff's proof, when he failed to add to it evidence of a like kind as to other mills, the Court should have excluded what had already been admitted, for in any view, it could only be competent as evidence of one of a series of similar facts or as a first link in the chain of proof. The error in permitting the witnesses, against the defendant's objection, to testify as above set forth entitles the latter to another trial. It is not necessary that we should consider the other exceptions, as the questions they raise may not be presented if the case should again come before us.

New Trial.

DOUGLAS, J., concurring in result. I concur with the Court in the conclusion that, according to our decisions, which, I will frankly say, have in some instances gone too far, the defendant is entitled to a new trial on account of the admission of the witness' opinion that the cog-wheels should be boxed. I do not concur in the opinion of the Court wherein it says that it was error to permit the witness to testify that he "had seen a frame with the cogs boxed up." The witness does not appear to have expressed any opinion as to the best appliance for safety, nor in fact as to any other matter. He merely stated a simple fact which was material to the case. How else could the plaintiff begin to prove that boxed cogs

MARKS *v.* COTTON MILLS.

were in general use except by witnesses who had seen them in
other mills.    Even experts could not prove that they were in
general use unless they knew the fact of their own knowledge.
Whether boxes are the best method of protecting cogs may
be a question of expert opinion, but whether they are in gen-
eral use is a fact to which any one can testify.    It is not
necessary to prove it by any one witness, as it is difficult
and frequently impossible to find any one man who has been
through a sufficient number of mills to know the general
custom.    On the other hand, one witness may testify as to
certain mills and other witnesses as to other mills.    It can-
not be held that the testimony of a witness is incompetent,
simply because he does not testify as to a sufficient number
of mills, because in that event the first witness would always
be incompetent, and so all the witnesses would be excluded
in turn.    Moreover, the fact of general' use is not the exclu-
sive test, nor can a box be called a new and untried device.
The true test is the question what a man of ordinary pru-
dence, having due regard for the rights and safety of his
fellow-men, would do under similar circumstances.    Suppose
that cog-wheels, placed in a position of constant danger to
passers by, could be conveniently covered at small expense
and without materially interfering with their efficiency,
would it not be the duty of the owner to have them covered?
The fact that a witness saw cog-wheels boxed in another mill
would be admissible as *tending* to show that they could be
boxed, and that they were boxed in other mills of a similar
kind.    What weight the jury would give to the evidence is
another question and one entirely for them.    Whether cogs
in a given position can be boxed without interfering with
their efficiency may require some experience to determine; but
surely it does not require any expert knowledge for a man
to know that there is less danger from machinery when it is
boxed up so that he cannot possibly get into it, than there

is if it is left open so that he may get into it. There is certainly less danger of falling out of a window when the blinds are closed and securely fastened than when they are open. I see no error in the admission of that part of the testimony.

CLARK, C. J., concurs in the concurring opinion.