PRESSLY v. YARN MILLS.

(Filed May 16, 1905.)

*Master and Servant—Appliances—Contributory Negligence —Continuing Negligence—Assumption of Risk—Harmless Error.*

1. It is the duty of an employer to supply his employees with appliances reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use.

2. While an employee assumes all the ordinary risks incident to his employment, he does not assume the risk of defective appliances due to his employer's negligence, unless such defect is obvious and so immediately dangerous that no prudent man would continue to work on and incur the attendant risks.

3. An instruction in an action for injuries to an employee, that if the injury would not have happened if the employer had supplied the machine with a shifter, and this was the proximate cause of the injury, this would be "continuing negligence" and the issue as to contributory negligence should be answered in favor of the plaintiff, though he may have been negligent in the use of the machine, was erroneous as the employee in cases of this kind is not absolved from all duty to act with reasonable care and prudence.

4. Where there is no evidence of contributory negligence apart from the fact that the plaintiff continued to work on after knowing of the existence of the defect which caused the injury, and this question, under a proper charge, was submitted to the jury on the issue as to the assumption of risk, an erroneous charge on the issue of contributory negligence is not reversible error.

5. The principle which holds the employee to an equality of obligation and responsibility with his employer in regard to defective machinery and appliances, is unsound and unjust.

BROWN, J., dissents.

ACTION by J. M. Pressly against Dover Yarn Mills, heard by *Judge O. H. Allen* and a jury, at the January Term, 1905, of the Superior Court of MECKLENBURG County.

This was an action for damages for negligence tried upon the following issues:

1. Was plaintiff injured by the negligence of defendant?

2. Did plaintiff by his own negligence contribute to his own injury?

3. Did plaintiff voluntarily assume the risk?

4. (As to damages.)

There was evidence on the part of the plaintiff tending to show that at the time of the injury he was the employee of the defendant, working in the spinning room; that his position was that of section hand and his duties were the overhauling and repairing the spinning frames, of which there were 18 in the room; that his wages were $1 a day, and he worked in the charge and under the control of one Michael, who was the overseer of the spinning and carding room; that while engaged in the performance of his duty his hand was seriously injured by reason of a defective appliance which the defendant had negligently furnished—the defect complained of being the lack of a shifter on the spinning frame. These frames were some 25 or 30 feet long, driven by mechanical power, and the same was applied at one end of the frame by means of a belt running on a pulley. There were two of these pulleys on a rod, one tight and the other loose. When the belt was applied to the tight pulley, the machine was put in motion for its work, and when it was desired to stop the machine the belt was moved to the loose pulley, in which case the power was withdrawn from the machine. These shifters were a mechanical appliance, a structural part of the machine, approved and in general use, by which this belt was pushed from one pulley to the other, and it also would hold the belt to the pulley where it was placed. On the machine in question the shifter was off. The same appliance was wanting in three other frames in this room. The plaintiff had discovered the absence of the shifters on this machine and called it to the attention of Michael, the overseer,

and told him there were some shifters needed, and the overseer replied that they needed many things they didn't have. On the day of the injury, being informed by the operator that the machine was out of fix, he got a wrench and was in the act of fixing the gearing at the opposite end of the machine from the pulleys where the power was applied, and while so engaged, the machine unexpectedly started and the plaintiff was injured. The start was caused by the belt shifting from the loose to the tight pulley, and this would not have occurred if the shifter had not been lacking.

The defendant in its answer admitted that there was no shifter on the machine, but denied the allegation of negligence, and also by way of defense, alleged contributory negligence and assumption of risk. The defendant offered no testimony.

The court charged the jury in substance on the first issue that it was the duty of defendant to furnish appliances reasonably safe and suitable, such as were approved and in general use, and if there was default in this respect and it was the proximate cause of the plaintiff's injury they would answer the first issue "yes;" otherwise they would answer it "no." On the issue of contributory negligence, the judge told the jury in substance that if they should find from the evidence that the injury would not have happened if the defendant had supplied the machine with the shifter and that was really the proximate cause of the injury, this would be a continuing negligence and they should answer the second issue "no;" though the plaintiff may have been negligent in using the machine. On the issue as to the assumption of risk, the third issue, the court charged the jury that if they should find from the evidence that the plaintiff knew, or by the exercise of ordinary care he ought to have known, at the time of the injury, that the spinning frame which he was repairing was not provided with a shifter, and therefore the belt was liable to slip from the loose to the tight pul-

ley, and should further find from the evidence that the act of the plaintiff in so attempting to repair the spinning frame was obviously so dangerous that in its performance the probabilities of danger were greater than those of safety, as where the machinery is so grossly and clearly defective that the plaintiff knew he was taking an extra risk, then he assumes the risk and cannot recover; and if you should find that his conduct was of that character in continuing to work there, and he was working with a machine clearly so dangerous that he must have known he was taking an extra risk, then you will find that he did assume the risk, but if you find it was not of that character, then you will find that he did not assume the risk and answer the issue accordingly.

Under the charge of the court the jury answered the first issue "yes," and the second and third issues "no," and awarded damages. There was judgment on the verdict for the plaintiff and the defendant excepted and appealed.

*Burwell & Cansler* for the plaintiff.
*Chas. W. Tillett* and *Shepherd & Shepherd* for the defendant.

HOKE, J., after stating the facts: In charging the jury on the first issue, the judge below properly stated the obligation of the employer to supply his workmen, in plants of this character, with machinery and appliances safe and suitable for the work in which they are engaged, and such as are approved and in general use. He charged in substance that if there was any negligent default in this respect, and this negligence was the proximate cause of the injury, they should answer the first issue "yes." *Witsell v. Railroad,* 120 N. C., 557; *Marks v. Cotton Mills,* 135 N. C., 287.

The charge on the third issue as to assumption of risk is also supported by well considered adjudications of this

court. *Sims v. Lindsay,* 122 N. C., 678; *Lloyd v. Hanes,* 126 N. C., 359.

In *Hicks v. Cotton Mills,* (at this term), the court has held that while the employee assumes all the ordinary risks incident to his employment, he does not assume the risk of defective machinery and appliances due to the employer's negligence. These are usually considered as extraordinary risks which the employees do not assume, unless the defect attributable to the employer's negligence is obvious and so immediately dangerous that no prudent man would continue to work on and incur the attendant risks. This is, in effect, referring the question of assumption of risk, where the injury is caused by the negligent failure of the employer to furnish a safe and suitable appliance, to the principles of contributory negligence; but it is usually and in most cases desirable to submit this question to the jury on a separate issue as to assumption of risk, as was done in this case. When the matter is for the jury to determine on the evidence, it may be well to submit this question to their consideration on the standard of the prudent man, in terms as indicated above. The charge on the third issue substantially does this, and the language used is sanctioned by the authorities. *Coley v. Railroad,* 129 N. C., 407; *Marks v. Cotton Mills, supra.* There is no error in the charge of the court as to assumption of risk.

On the second issue, that addressed to the question of contributory negligence, the judge charged the jury in substance that if they should find from the evidence that the injury would not have happened if the defendant had supplied the machine with a shifter, and this was the proximate cause of the injury, this would be continuing negligence and they should answer the second issue "no," though the plaintiff may have been negligent in the use of the machine. As we have held in *Hicks v. Cotton Mills, supra,* this is not a correct proposition as to every negligent failure on the part

of the employer to furnish a safe appliance by reason of which the injury occurs and is not the law in cases of the character we are now considering. The employee is not in such instances absolved from all obligation to act with reasonable care and prudence, and if there is negligence on his part, concurring as the proximate cause of the injury, the plaintiff cannot recover. The charge therefore on this issue would be reversible error, but for the fact that in the opinion of the court there is no evidence offered which shows or tends to show contributory negligence, apart from the fact that the plaintiff continued to work on after knowing of the existence of the defect which caused the injury. This question as we have seen, was under a proper charge submitted to the jury on the third issue, and the defendant has had the benefit of every position which was open to him in the charge of the court addressed to that issue. The only default imputed to the plaintiff, apart from the fact that he continued to work on, was, that he failed to push the belt entirely off both pulleys. But this, we think, is no such evidence of negligent default that it should be submitted to the jury as an additional defense.

The plaintiff (who was the only witness examined except as to character) testified that it was a very troublesome matter to replace the belt when it had been taken entirely off, sometimes requiring as much as one-half hour; that he had never been told by any one to take it entirely off and it was not usual to do it, and that he had never seen the machine start that way. And we do not think that, by any reasonable standard of conduct on the evidence in this case, the plaintiff was required to move the belt entirely from the pulley. The only defense therefore available to the defendant on the facts of this case, after its negligent default was established by the verdict on the first issue, was the fact that the plaintiff had gone on doing his work in the presence of a known

defect, and this, as we have said, was submitted to the jury under a correct charge on the issue as to assumption of risk.

We are not called on to determine whether any difference exists in principle between the cases where the defect complained of was known when the plaintiff entered on the service, and those where the knowledge was acquired afterwards. While many of the authorities draw such a distinction, there seems to be none in reason. But the facts of the present case do not require such decision, and many of the authorities therefore relied upon by the defendant do not apply.

The plaintiff testified that he entered on the service of the defendant in October, 1893, and was given a place in the spinning room, his duty being to overhaul the machinery, or spinning frames. He worked at that for five or six weeks, when he became a section hand, working in the same room, his duties being to overhaul the machinery, repair it, and look after the hands in that room. At the time the plaintiff became a section hand, there was evidently an increase of authority, but the occupation was at the same place and very similar in character, and there was no change in the contract of service or wages paid, so far as the testimony now discloses. So that, whether the knowledge of the defect came to the plaintiff before or after he became a section hand, it certainly came to him after he entered on the service, and it is fair to consider the case in that aspect.

It is suggested that if a negligent failure to furnish a shifter is declared to be the proximate cause of the injury on the part of the employer, by that same token, the employee, working on when aware of the defect, is also negligent, and such negligence should be held to be concurrent, and to hold otherwise would require the master to take more care of the servant than the servant takes care of himself. This position finds support in some of the decided cases, but the court does not think it is in accord with the better considered adjudications on the subject. The position had its origin in some of

the older decisions rendered when the employment of labor
was much more restricted, and the implements and appli-
ances were comparatively simple and attended with little
danger.    At that time, it was considered of little consequence
what the employee assumed, and as a matter of fact he as-
sumed the risk of almost everything that happened to him.
As business enterprises, however, were enlarged and extended
and machinery became more complicated, and larger numbers
of men were being employed in its operation, it was found
that the position here contended for was not a proper one by
which to determine the relative rights and duties of employer
and employee in regard to defective machinery and appli-
ances.    It was based upon an entirely erroneous conception
that there was a perfect equality of position between the two
to such defective appliances, but nothing is further from
the fact, and for the reason, chiefly, that the employer con-
trols the conditions in which the employees do their work.
His duty to furnish machinery and appliances reasonably
safe and suitable, such as are approved and in general use, in
the exercise of a reasonable care, is absolute.    As a rule, he
buys the machinery from the manufacturer or dealers who
are experts and can change when he desires; he selects and
employs a superintendent and the skilled labor, and has the
time and opportunity to inform himself as to the character
of the machinery he buys and the hazards incident to its
use; and, accordingly, the principle which holds the em-
ployee to an equality of obligation and responsibility in the
respect suggested, is unsound and unjust, and has been re-
jected in the more recent and better considered cases.    Beach
on Cont. Neg., sec. 372; *Lloyd v. Hanes, supra; Patterson v.
Pittsburg,* 76 Pa. St., 389; *Kane v. Railroad,* 128 U. S., 91;
*Smith v. Baker,* Appeal Cases (1891), 325.

Again, it is urged that this man was injured in repairing
the machine and in that aspect must be considered to have as-
sumed the risk.    In support of this position we are referred to

the case of *Spinning Co. v. Achord,* 84 Ga., 14. In that case the plaintiff was stated to be a skilled machinist and carpenter who had put up machinery, knew all about its conditions and defects, called attention to the lack of certain appliances which threatened its safety and remonstrated about its condition in this respect. The machinery having gotten out of order, the plaintiff was sent to repair the defect and was injured while so engaged. The injury was caused in part by the very defect he was called on to repair, and it might well be determined that it was one of the ordinary risks in the work he had undertaken to perform. But no such facts existed in the case we are now considering: The plaintiff was no skilled machinist, but an ordinary hand working at one dollar per day under an overseer in the same room, (a sort of machinist he called himself in one place). His duty seems to have been to tighten bolts and adjust the gearing, as might be required from the ordinary wear of its work. "As good as the average man engaged in such work," he says of himself. He was not endeavoring to repair the defect which caused the injury at all. This was beyond his skill and not within the line of his duty. He had notified the employer, or its representative, that four shifters were wanting and the same had not been supplied, and he was unable to make or supply them himself. This was done, it seems, not so much because he anticipated injury as because he was overlooking the machine and considered it his duty to inform the employer of existing conditions. His duty called on him to work day by day in the presence of this defect and subject to its consequences, and which the jury, on the first issue and under proper instructions, have found to be an appliance which the employer negligently failed to furnish and which was the proximate cause of his injury. While engaged in his duties in adjusting some gearing at the end of the machine opposite the point where the power was applied, and by reason of the absence of the shifter the belt was in

some way shifted from the loose to the tight pulley, and he was injured.

The jury have by their verdict, declared that the defendant was negligent in failing to provide the proper appliance and such negligence was the proximate cause of the injury, and that the plaintiff did not assume the risk. There was no evidence of contributory negligence imputable to the plaintiff, except what might exist from working on in the presence of an observed danger and this the jury have determined against the defendant on the issue as to assumption of risk.

The court is therefore of opinion that there is no error in the record and the judgment below is

Affirmed.

CLARK, C. J., concurring: The doctrine of "assumption of risk" is of comparatively recent origin and when first introduced the decisions of the courts were far from uniform, and in some cases illogical. With fuller discussion and clearer analysis, the doctrine has been repudiated that mere knowledge on the part of the servant of defective appliances, when taking employment or afterwards, is an assumption of risk which relieves the employer of the duty of furnishing reasonably safe appliances and a reasonably safe place in which to work. That rule ignored the fact that the employee was not on equal terms with the employer. It ignored the duty of the State to protect the welfare of a deserving and meritorious class of its citizens, who should not be exposed to unnecessary risks in the search for bread, and cynically made the necessities of the laborer condone and pardon the neglect of duty on the part of the employer.

There has been at times a confusion of ideas as to assumption of risks in not discriminating between "risks necessarily incident to the employment" which is all the laborer can be justly held to assume, and "risks not so incident, but arising from the circumstance that the danger was a known one—

as a defective machine or an unsafe place." *Railroad v. Keller*, (Tex.), 76 S. W., 802. This last the employee does not assume. To so hold was simply to maintain that the master was liable for negligence for failure to furnish safe appliances and a safe working place so long as he had no employees to be injured, but so soon as he obtained employees that fact removed his liability as they assumed the consequences of his negligence. All that the courts can justly hold is that when the defect in the machinery is so patent that it is reckless disregard of danger to take employment, then the employee is recklessly negligent. But in such case, his recklessness is contributory negligence, not assumption of risk. Hence in *Rittenhouse v. Railroad*, 120 N. C., 546, this court properly said, "*Reckless* assumption of risk has always been taken in our courts as embraced in the issue of contributory negligence," citing cases.

This proposition is stated by Labatt Master & Servant, section 2 and 3, in somewhat different terms but to the same effect. Sec. 2. "Risks resulting from the master's negligence are not assumed by the servant." Sec. 3. "Risks not resulting from the master's negligence are assumed by the servant." These last are necessarily the ordinary risks of the particular employment when furnished with reasonably safe appliances and a reasonably safe working place. "Assumption of risk" means that an employee takes upon himself the ordinary risks necessarily incident to any business however dangerous or hazardous, upon which he enters. *Volenti non fit injuria*. As pithily stated by *Reade, J.,* in *Crutchfield v. Railroad*, 76 N. C., 320, the employee assumes the risk of injury "from accidents, but not that resulting from *negligence* of the employer." The employee does not assume any risks which are added to the operation of such business by the neglect of the employer to furnish suitable and proper appliances, though the employee may know, when he accepts employment, that such appliances are lacking. If

he did, the maxim would read *scienti non fit injuria,* which is not law. The difference between *scienti* and *volenti* has been recently and fully discussed. *Lloyd v. Hanes,* 126 N. C., 359.

Assumption of risk, as appears from that case and in the English cases therein cited, extends beyond the above limits only to the case where a particular machine has become defective, of which the employee has knowledge and the employer has not. In such cases, if the employee works on, he assumes the extra risk, but if he reports the defect and is told to keep on, and does so for fear of losing employment, there is no voluntary assumption of risk, and the liability for injury caused thereby is on the employer. It was so held in the leading English case. *Yarmouth v. France,* 19 Q. B. D., 660, cited in *Lloyd v. Hanes, supra.*

In *Crutchfield v. Railroad,* 78 N. C., 300, *Bynum, J.,* says: "The farthest the courts have ever gone in such case is this—if the servant remains in the master's employ with knowledge of defects in machinery he is obliged to deal within the course of his regular employment, he assumes the risks attendant upon the use of the machinery unless he has notified the employer of the defects"—evidently meaning defects that have come to light during the employee's operation of the machine, for of course he need not notify the employer of the absence of suitable and proper appliances when their absence is or should be already well known to the employer and he is chargeable with negligence for not having supplied them.

*Judge Caldwell,* than whom no abler judge has sat upon the United States Circuit Bench, says in a recent opinion: "Dangers which needlessly imperil human life and which can be remedied at little cost, are not dangers neccessarily incident to the operation of a railroad, but are dangers which it is the duty of the company to remove. The necessities of laboring men are often very great. The necessity of provid-

ing food for themselves and families may drive them to accept employment at the peril of their lives. But the employer does not obtain a license to kill his employees with impunity by proclaiming his purpose to subject them to unnecessary and needless perils—to perils that a reasonably prudent man, having a due regard for human life, would remove. Common humanity demands this. Moreover the State has an interest in the lives of her citizens, and will not permit an employer needlessly to imperil the lives of employees. The very highest consideration of public policy demands an enforcement of this rule. And the peril is unnecessary and needless where, as in this case, it can be removed at a slight expense. Notice (to employee) of the unnecessary peril in such case, goes for nothing. As long as the needless peril is maintained, the employer is guilty of culpable negligence; and when, by reason of such needless peril, an employee is killed, the law presumes he was exercising due care to escape the peril, and the employer is responsible for his death unless he can prove affirmatively that the employee was guilty of negligence. In such case the death of the employee testifies that he was in the faithful discharge of his duty and in the exercise of due care, and that his death is the result of the needless peril to which he was subjected." Upon this decision a very learned law writer, the author of Thompson on Corporations, says: "It is hard, very hard, to understand how humane judges can balance the question of a slight, very slight expense to the railroad company against the mangling and death of meritorious laboring men, the tears and agony of their widows, and the beggaring of their orphaned children."

What these eminent judges have said as to injuries causing death should apply equally when maiming, disabling and pain are the result of the employer's failure to furnish safe appliances. Indeed the public conscience has caused the enactment of the statute here and in many other States which

while repealing the "fellow servant" doctrine as to railroad employees, incidentally forbids "assumption of risk" as to defective appliances and ways when railroads are the employers. *Coley v. Railroad,* 128 N. C., 534; Same Case, 129 N. C., 407. This last was really unnecessary for no employee assumes such risks unless by such reckless disregard of them, as amounts to contributory negligence. *Greenlee v. Railroad,* 122 N. C., 978; *Troxler v. Railroad,* 124 N. C., 191. The State cannot afford to be unjust to its laboring element. Public policy, recognizing that the employees are not on equal ground with the employers in large establishments using powerful machinery, driven by steam or other power and revolving at high speed, requires that such employers shall furnish its operatives safe machines and a safe place in which to work. The test of safety is the use of approved appliances in general use. *Witsell v. Railroad,* 120 N. C., 557. Failure in this or furnishing such machines in defective condition is actionable negligence. The employee "assumes the risk" of such business, when furnished such appliances and a safe place in which to work. He assumes nothing more. *Lloyd v. Hanes,* 126 N. C., 359.

No one would look to the House of Lords in England for a decision that is biased either in favor of labor or against capital. In that court, as elsewhere, the earlier decisions somewhat confuse the doctrine of the laborer's assumption of the ordinary risks of the employment, with the totally different doctrine of his assumption of risk from the employer's known negligence in not having furnished safe appliances. But the court "righted itself," as this court and others have done on fuller discussion and consideration, and has placed the responsibility for defective appliances upon the employer who could have done his duty by the employee but did not. In several cases in that high tribunal, already quoted by us with approval in *Lloyd v. Hanes,* 126 N. C., 363, it is said that *"volenti non fit injuria"* is not to be read *"scienti non fit*

*injuria"* for that knowledge of a defective appliance ` by a
needy employee seeking bread to maintain himself and fam-
ily is not to be tortured into a voluntary and free release of
the employer from liability for his negligence and the as-
sumption of that liability by the employee.

The law is not fossilized. It is a growth. It grows more
just with the growing humanity of the age and broadens
"with the process of the suns." The doctrine of *Crutch-
field's case* and two or three like cases decided not long after
it and before the subject was fully discussed and viewed in
all its bearings has been long quietly ignored by this court
in all the more recent cases and practically overruled. It has
been resurrected and used only in the decision rendered in fa-
vor of the American Tobacco Company in *Ausley's case,* 130
N. C., 34, by a bare majority of the court and contrary to all
the more recent decisions and it may be noted that *Ausley's
case* has not been since cited with approval in any instance.
The uniform rulings of this court in the later cases, for many
years, have been to the contrary.

Could there be greater mockery to assert that the em-
ployer is culpably negligent and pecuniarily liable, if dan-
gerous and defective appliances are furnished and then to
hold that if the laborer is mangled or killed there is no lia-
bility because by accepting employment the laborer had re-
leased the employer from liability? Labor is the basis of
civilization. Let it withhold its hand and the forests return
and grass grows in the silent streets. We are told in that
excellent little work, by some of the leading lawyers of Eng-
land, "The Century of Law Reform," which every lawyer
should read, that not so long since, in England, labor unions
were indictable as conspiracies, and the wages of labor were
fixed by officers appointed by capital and it was indictable
for a laborer to ask or receive more. There was no require-
ment that employers should furnish safe appliances, no lim-
itations as to hours of labor, no age limit. With the era of

more just legislation in both this country and England, and elsewhere, shortening the hours of labor, forbidding child labor, requiring sanitary provisions and safe appliances, labor has been encouraged and the progress of the world in a few years has more than equaled that of all the centuries that are dead. Justice to the laborer has been to the profit of the employer. The courts should not be less just than the laws.

BROWN, J., dissenting. I cannot concur in the judgment or opinions in this case. The facts are few and simple and are all taken from plaintiff's evidence, who, with the exception of two character witnesses, was the only witness examined. Plaintiff was employed by the defendant as a skilled machinist. He was first employed as an overhauler and cleaner of machinery, and was then promoted to section-man. As overhauler he cleaned spinning frames and put spindles on them. As section-man he had charge of eighteen spinning frames and it was his duty to repair them and to oversee and look after the hands. While he was an overhauler and cleaner he discovered that four of these machines lacked a shifter. A spinning frame is about twenty-five feet long and is operated by a shaft running through it. On one end of this shaft are two pulleys, close to each other and of the same size. The one nearest the spinning frame is tight on the shaft and when the belt is placed on it, the spinning frame is put to work. The other pulley is loose and when the belt is shifted from the tight pulley to it, the machine is stopped and the belt revolves the loose pulley around the shaft without turning the shaft. The plaintiff testifies that a shifter is for the purpose of shifting the belt from the tight to the loose pulley and pushing it back to the tight pulley again. It is used for the purpose of starting and stopping the spinning frame and prevents the belt from slipping back to the tight pulley and giving the machine a sudden start. In the

absence of the shifter, the belt can be pushed from the tight to the loose pulley and *vice versa* "by using the hand or a bobbin, or something to push the belt off." The travis gear is a part of the spinning frame and is on the opposite end from the two pulleys. While plaintiff was overhauling he called the superintendent's attention to the absence of shifters on four of the machines in his care. The superintendent did not promise to furnish the machines with shifters. On December 23, 1903, the plaintiff was called upon by an operative to repair a spinning frame. Upon examination he found the travis gear out of order. He stopped the machine by taking a bobbin and transferring the belt to the loose pulley. By some unknown means the belt got back on the tight pulley while plaintiff was at work on the spinning frame and started it going and cut off plaintiff's thumb. At the conclusion of the evidence, defendant moved to nonsuit. I think the motion should have been granted for these reasons: 1. Because there is no evidence of negligence. 2. Because the plaintiff was guilty of negligence which caused his injury. 3. Because plaintiff assumed the risk.

1. The very foundation of the doctrine of negligence, in its relation to the injurer and injured, is duty. What duty one owes to the other is to be determined by their relations to each other. The duty the defendant owed to an operative, operating the spinning frame, differs materially from that which it owed to a skilled mechanic, who fully understands the construction of the machine and knows its defects, while engaged in repairing it. The operative has a right to rely upon the diligence and care of the master in furnishing a safe machine to work and a safe place to operate it in, but the master is not and never has been declared to be an insurer of the lives or limbs of his employees although the law holds him to a high degree of care in the discharge of his duty. If an operative working the spinning frame had been injured by reason of the absence of the shifter, in shifting the

belt and stopping or starting the machine, I should say he would be entitled to recover, unless his own carelessness at the time directly caused his injury. I gather clearly from the plaintiff's evidence that the shifter was a most convenient attachment and used for the sole purpose of transferring the belt from one pulley to the other. While its construction was such that it would necessarily hold the belt on the pulley to which it had shifted it, it was not designed or intended as a protection to the operator of the spinning frame. It was not primarily a safety device. I am sure it was never thought of as a necessary or reasonable protection to a machinist engaged in repairing the spinning frame, and that this plaintiff nor any other machinist ever so regarded it. It was used for starting and stopping the machine. The plaintiff was not injured while transferring the belt for this purpose. So far as the evidence discloses, it is perfectly safe to transfer the belt with the hand or a bobbin, but not so convenient, and according to the plaintiff it is the only time he ever knew the belt to slip. The negligence of the defendant is to be determined by this rule: Could the defendant by the exercise of great diligence and care have reasonably foreseen that this skilled mechanic would have been injured while repairing that spinning frame because of the absence of a shifter? The plaintiff, a skilled mechanic, who says he understood the machine and his trade as well as the average machinist, could not foresee it. How then could the master foresee it? It may have been negligence of his duty to operatives upon the part of the superintendent not to get the shifters and have plaintiff put them on, but could any reasonable person foresee that the absence of the shifter might cause this particular injury, not to an operative, but to a skilled machinist, who knew of the defect and how to render it harmless, while repairing the machine? The plaintiff says he worked in the defendant's mill over ten weeks before he was hurt. All that time he knew the four spinning

frames had no shifters. He says he was called "to repair these four particular frames every day," and again says "on an average every other day." On these occasions he pushed the belt on and off with his hand. He states that at all times when he repaired these four machines, he would take his hand or a bobbin and push the belt over on the loose pulley while he was working on the machine. "Did the belt ever slip from the loose to the tight pulley while you were working on these machines?" he was asked. He answered: "No, sir." "Did you ever see it happen?" No, sir. I knew the shifter was off when I went to repair this spinning frame (on October 23, when he was hurt), but I did not think about it at the time." "Suppose you had thought about it, would you have been afraid to work on it?" "No, sir." "Why?" "Because I had never seen one start up like that." Plaintiff further states that he could have easily thrown the belt off both pulleys and thereby prevented all possible injury. "I never had thrown the belt off the two pulleys before going to work on the frame except when I was an overhauler and did it then to keep from wearing the bushing off." "And you never had an accident before?" "No, sir."

I am at a loss to find any logical theory upon which it can be held that the defendant owed to the machinist-repairer any duty to furnish a shifter for this machine. Why did plaintiff notify the superintendent of the absence of shifters? For the reason that he was charged with the duty of keeping these machines in perfect repair. Plaintiff made the report in the line of his duty and for the convenience of the operatives, not for his own safety. He admits that he knew how to stop the machine without a shifter, and that by the easy, simple and obvious method of pushing the belt off both pulleys, he states, he could not possibly be hurt while repairing it. So, I think the conclusion is irresistible that, inasmuch as plaintiff was a repairer and not an operator, and

knew a perfectly safe, easy and obvious method of rendering the machine entirely harmless without a shifter, while engaged in the work of repairing it, the defendant owed him no duty to put a shifter on the spinning frame, although the defendant may have owed such duty to one regularly engaged in operating the machine. What may have been negligence to one employee is not necessarily so to another employee. Consequently I am of opinion that there is no evidence of actionable negligence so far as this plaintiff is concerned.

2. Assuming the defendant was negligent, the plaintiff was guilty of contributory negligence.

There are two facts necessary to constitute contributory negligence: (a) A negligent act upon the part of the injured; (b) Such negligent act must be the proximate, nearest, most immediate cause of the injury. The plaintiff admits that he was guilty of a negligent act. He is a skilled machinist and knew the construction of the machine and the use and effect of shifters. He knew a perfectly safe and easy method of repairing the machine without running the slightest risk from the absence of a shifter. He knew that the shifter was off, and as a skilled machinist, he knew every possible consequence that might follow. What was his duty under the circumstances to his master? Plainly, to use the safe method. He was careless and negligent in not doing so. Where there is a perfectly safe method of doing a thing and another which is not so safe, it is the duty of the servant to the master, as well as to himself, to take the safe method. If he fails to do so and is injured, he cannot recover. Labatt on Master & Servants, secs. 391-392. The fact that plaintiff says he forgot to do it, and did not think of it, does not absolve him from negligence. It is the very essence of negligence to forget to perform a duty which the law imposes. If plaintiff had been ignorant of the absence of the shifter, or ignorant of its uses and purposes, this would not apply. Notwithstanding the master's negligence

in not remedying the defect in a machine, if the defect is known to the servant, and the latter can, by the exercise of ordinary care and prudence, save himself from injury, it is his duty to do it. If he fails to do it, he is guilty of contributory negligence. This doctrine is applied every day to railway accidents, and it is applicable to the relation of master and servant. Where the servant is employed upon work, concerning which he has equal knowledge with the master, and the latter is negligent in his duty to the servant, and the servant is injured, he cannot recover, if he himself has been guilty of negligence and could by reasonable care have avoided the injury. Wood on Master & Servant, sec. 328. "The servant is himself bound to exercise proper care and cannot claim indemnity from the master for an injury resulting to him which might have been prevented if he had himself been reasonably diligent." Wood on Master & Servant, *supra.* It is useless to cite more authority for this. The author is sustained by all other text-writers and adjudications with which I am acquainted, and cites many authorities in his support. See also *Crutchfield's* case, 78 N. C., 300. The doctrine is founded upon the broad and reasonable principle that, notwithstanding another's negligence, if the injured person has the opportunity by the exercise of ordinary prudence to avoid injury from it and he fails to do so, he is himself guilty of negligence which is contributory, because it is the proximate cause. This is the foundation of the so-called doctrine of the "last clear chance," as first declared in *Davies v. Mann,* 10 M. & W,. 546. All persons are expected to exercise ordinary care and prudence in their dealing with their fellows, consequently he who has the last clear chance to avoid and prevent an injury, and does not exercise reasonable care and prudence to do so, is himself responsible for it, for his negligence is the immediate or nearest cause. As is well said by *Shepherd, C. J.,* in *Smith v. Railroad,* 114 N. C., 728, the principle of *Davies v. Mann,* simply furnishes

a means of determining whether plaintiff's negilgence is a remote or proximate cause of the injury. This suggestion of *Judge Shepherd* is commented on with approval by the annotator to L. R. A., Vol. 55, page 419. The plaintiff had the last opportunity to render his master's negligence absolutely harmless. Had he exercised ordinary care and used the knowledge he possessed, he would have pushed the belt off both pulleys. It was a simple, easy method of obviating the danger from the need of a shifter, so far as plaintiff was concerned, and he knew it. A prudent mechanic exercising his wits would thus have entirely disconnected the machine from the motive power of the mill. Then he would have been absolutely safe. But he forgot it; did not think of it. The plaintiff had the last clear chance to avoid the injury by exercising ordinary care. He failed to do it. It is negligence and the proximate cause of the injury. If he had done what he should have done under the circumstances, the injury could not have been inflicted.

There was something said in the argument of this case about the failure to supply the shifter being "continuing negligence" and barring the defense of contributory negligence. The answer to this is very fully and clearly stated by *Mr. Justice Hoke* in *Hicks v. Mfg. Co.,* at the present term. I think the expression "continuing negligence" is a misnomer, a misapplication of terms. In using it in the *Greenlee* case, the present Chief Justice did not refer to it as a "doctrine of the law of negligence." He evidently meant to charge the railway company with a "continued neglect" of a statutory duty of so grave and flagrant character that it shut out entirely any consideration of the negligence of the injured brakeman. All negligence is continuing, whether that of the injurer or injured. It must be existent and potential at the moment the injury is inflicted or it is not negligence.

3. The plaintiff assumed the risk of any injury from the absence of the shifter.

I will sum up the facts pertinent to this defense. Plaintiff is a machinist of six years' experience; was an overhauler and cleaner; knew then of the absence of the shifters; called superintendent's attention to it; he failed to supply them. After that plaintiff accepted the superior position of section-man and contracted specifically to repair these particular machines, with full knowledge of the defect. Why was plaintiff willing to assume this risk? Because he knew an easy and safe method of guarding against all possible danger to himself from absence of the shifters, and therefore he ran no risk. _Volenti non fit injuria._ Why does he fail to use such method? Because he forgot it; did not think of it, and because in all his experience he had never known the belt to shift back before this occasion. Upon such facts, I hazard the statement, no court in this country or England has permitted a plaintiff to recover.

The servant, upon hiring to the master, assumes all the risks and hazard incident to the business. He assumes the risk of all plainly obvious dangers and all that he personally knows of at the time he enters into the service. Am. & Eng. Encyc. (2nd Ed.), Vol. 20, p. 110, and the many cases cited. Forgetfulness of the risk by the servant is no excuse. _Ibid,_ p. 120. It is his duty to think. Our present Chief Justice has defined assumption of risk as follows: "That when a particular machine is defective or injured, and the employee, knowing it, continues to use it, he assumes the risk. The doctrine has no application where the law requires the adoption of new devices (automatic couplers) and the employee is ignorant of that fact or expecting daily compliance." In this case the shifter was no new device required by statute to be used, and the superintendent had refused to furnish them before plaintiff contracted as section-man to repair the machines. The definition of the Chief Justice is supported by

the overwhelming weight of authority.  He evidently had in
mind and followed *Crutchfield's* case, *supra,* for it expressly
holds that where the servant knows of the defect when· he
enters into service, or remains in service with full knowledge,
he cannot recover.  *Crutchfield's* case was decided by a court
of great ability, and the opinion written by *Judge Bynum,*
conceded to be a law writer of great accuracy and clearness.
He says, where the servant has equal knowledge with the
master, he takes the risk.  This servant knew of the de-
fect *before he accepted the place,* the duties of which required
him to repair the machine, and he knew how to obviate any
danger.  *Crutchfield's* case is cited and approved in *Johnson
v. Railroad,* 81 N. C., 453; *Cowles v. Railroad,* 84 N. C.,
309; and *Porter v. Railroad,* 97 N. C., 66.  The same prin-
ciple is stated in *Cowles'* case, decided by *Smith, Ashe* and
*Ruffin,* who succeeded the court which decided *Crutchfield's*
case.  It is again stated with clearness by *Merrimon, J.,* in
*Pleasants v. Railroad,* 95 N. C., 122.  The same identical
principle is stated by *Avery, J.,* in *Hudson v. Railroad,* 104
N. C., 502, citing and approving the previous cases, which I
have named.  In *Ausley's* case, 130 N. C., 34, the same prin-
ciple is stated by *Judge Furches:* "Where an employee knows
all about the machinery and its defects before entering upon
the work, he assumes the risk incident thereto."  This reason-
able and just principle has become imbedded into the juris-
prudence of this State by repeated adjudications from 1878
to 1903, made by many able judges, whose opinions all of us
should respect.  The decisions of the New York court are
in line with those I have quoted.  *Mull v. Curtice,* 77 N. Y.
Supp., 13; *Schulz v. Rohe,* 149 N. Y., 132; *Hartwig v. Co.,*
118 N. Y., 664.  So in Indiana, *Salem Stone Co. v. O'Brien,*
40 N. E. Rep., 430 and cases there cited.  *Bedord v. Brown,*
(Ind Sup.), 42 N. E. Rep., 359, is a strong case from that
court.  "In a case where the servant is mature and experi-
enced, the law never imposes the duty on the master of be-

coming eyes and ears for his servant, where there is nothing to prevent the servant from using his own eyes, ears and experience to avoid danger." The Massachusetts court has rendered many decisions uniformly sustaining these views. In *Ward v. Connor*, 64 N. E. Rep., 986, that court says: "Further, it would seem, notwithstanding some things in the plaintiff's testimony, as though he must have been familiar with the operation of the machine, and that the risk of attempting to mend the belt in the manner in which he did, was or ought to have been obvious. But if it was not, it would at least seem that he was wanting in due care in attempting to mend the belt in the manner in which he did, without taking any precautions to *see whether the machine was liable to start.*"

Not only are the adjudicated cases in the best courts in line with these views, but so are the text-writers. Dresser, chap. 8. sec. 87-88. This writer substantially says that the servant assumes all risks from defective machinery known to him or which ought to have been known to him at the time he contracted to operate or repair it. Sec. 92. "When the servant uses machinery he knows to be defective he is bound to use *special precautions,* and if he fails to do so and is injured, he cannot recover." Bailey's Master's Liability, p. 169. The author cites cases from many States in support of his statement. To the same effect are the decisions of Illinois, Michigan and Iowa. The same author lays down the proposition that when there is a perfectly safe method known to the servant and he pursues one less safe for his own convenience or from carelessness, he assumes the risk and cannot recover for an injury received. Page 169, citing numerous cases. Thompson on Negligence states the law as Dresser and Bailey declare it to be. Sec. 4610. *Mr. Justice Hoke,* in *Hicks v. Mfg. Co.*, at this term, states his conception of the rule to be as follows: "The employee ordinarily has a right to assume that the employer has done his duty. This as-

sumption is not absolute, however, nor held to obtain in the face of established facts, and where the *defects* and dangers attributable to the master's negligence *have become known* to the employee and the risks appreciated under certain circumstances: these conditions may be classed with the ordinary risks which the employee does assume."

The rule laid down in *Sims v. Lindsay,* 122 N. C., 678, by *Clark, J.,* is reiterated by him in *Lloyd v. Haynes,* 126 N. C., 362, and taken in connection with the definition given by the same learned judge in *Greenlee's* case, above quoted, shows plainly that he is consistent in holding that the servant assumes the risk where (as in this case) he knew of the defective character of the machine and should have known the extra risk.

Measured by the rule laid down by either of my learned brothers, this plaintiff ought not to recover, because he knew of the defect, and he knew of the possibility of the belt's shifting itself in consequence of such defect. He was a skilled machinist and knew the connection between the pulleys and the travis gear and knew his danger if the machine suddenly started. He also knew of a simple and easy method of rendering the machine absolutely safe so far as he was concerned, notwithstanding the defect, and he negligently failed to take the proper precaution to prevent a sudden start. In the recent case of *Railroad v. McDade,* 191 U. S., 68, *Mr. Justice Day,* speaking for the court, after stating the general rule as to the assumption of risk, says: "This rule is subject to the exception that where a defect is known to the employee, or is so patent as to be readily observed by him he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation. In other words, if he knows of a defect or it is plainly obvious so that he may be presumed to know it and continues in his master's employ without objection, he is taken to have made his election to con-

tinue in the employ of the master notwithstanding the defect, and in such case cannot recover." This decision is in line with nearly all the cases in this court from 1878 to 1903.

The only case in our reports which militates against the views I have attempted to express, so far as I can see, is *Orr's* case, 132 N. C., 691. The force of that case, however, is destroyed, because in this and *Hicks'* case the court repudiates the idea that the principle enforced in the *Greenlee* and *Troxler* cases has any application to cases like this.

For the reasons I have given, I think this court should reverse the ruling of the Superior Court.

Since the opinion of the court and my dissenting opinion in this case were written, a concurring opinion has been filed. As the concurring opinion does not discuss the facts of the case at all, I am ignorant as to its purpose. The definition of assumption of risk formulated in the opinion of *Clark, J.,* in *Greenlee's* case is the definition I applied to the conduct of this plaintiff. I have seen no express repudiation of it by any one until now and therefore felt at liberty to use it. I fully concur in the general principles and humane ideas so beautifully expressed in the concurring opinion of the *Chief Justice.* I think, however, the ordinary rule as to assumption of risk does not apply to the facts of this case. As before stated, if the plaintiff had been an operative injured, without serious fault on his part, because of the defect in the spinning machine, I should say without hesitation he should recover damages. But this is the case of a skilled machinist sent to repair this very machine, who himself states that he knew of the defect and knew an easy method of guarding against any possible danger from the defect, and "forgot" to use it and did not think it "worth while." To apply the ordinary rule as to assumption of risk under such circumstances is practically to make the manufacturer an insurer of the machinist whom he employs to repair the defective machine. When the machinist is engaged in repairing one de-

fect, it is his duty to guard against injury from any defect in the same machine, especially when, as in this case, he knew of it, and knew an easy and obvious method of doing it. He should not be measured by the same yard stick as the operative running the machine in his daily occupation.