HENRY JONES v. D. L. TAYLOR & COMPANY, and D. L. TAYLOR & COMPANY, Inc.

(Filed 10 March, 1920.)

1. **Employer and Employee—Master and Servant—Duty of Master—Safe Tools—Safe Place to Work—Negligent Orders—Evidence—Questions for Jury.**

   The employer's duty is to furnish his employee a reasonably safe place to do the work required under his employment, and reasonably safe tools and implements for that purpose, and not to expose him to unnecessary danger; and where he has been doing his work in a safe way, and changes to an unsafe one under the employer's direct order or that of his vice principal under a reasonable apprehension of discharge, if he refused to obey, and a personal injury is thereby proximately caused, without his own fault, the negligent order is an actionable wrong entitling him to recover damages; and where the evidence is conflicting an issue is raised for the determination of the jury.

2. **Appeal and Error—Evidence—Nonsuit.**

   On an appeal from a judgment as of nonsuit upon the evidence, the Court will construe the evidence in the light most favorable to the plaintiff, if it tends to establish his contention.

**3. Instructions—Trials—Negligence—Contributory Negligence—Assumption of Risks—Prayers for Instruction.**

Where an action to recover damages for a personal injury alleged to have been caused by the defendant's negligence involves the elements of assumption of risks and contributory negligence, and defendant has duly tendered prayers for instruction thereon, it is not required that the judge should have used the language of the prayers tendered, if he has charged properly and adequately thereon in his own language, and in a manner that was substantially responsive.

**4. Same—Proximate Cause—Appeal and Error.**

Where in an action to recover damages for a personal injury alleged to have been caused by the negligent order of an employer, the elements of assumption of risks and contributory negligence are involved, requested prayers for instructions thereon are properly refused which omit therefrom all reference to the consideration of proximate cause.

**5. Employer and Employee—Master and Servant—Negligence—Assumption of Risks.**

The employer does not assume the risks of defective machinery and appliances due to the employer's negligence, unless the defect is obvious and so immediately dangerous that no prudent man would continue to work on and incur the attendant risks.

**6. Appeal and Error—Harmless Error—Trials—Counsel—Improper Remarks.**

Improper remarks of counsel in the argument are rendered harmless where the judge promptly interposes and sufficiently cautions the jury in respect to them.

**7. Instructions—Prayers for Instruction—Evidence—Verdict Directing —Nonsuit.**

A request for an instruction that the jury return a verdict for the defendant if they believe the evidence, is substantially the equivalent of a motion to nonsuit thereon, in construing the evidence most favorably for the plaintiff.

CIVIL ACTION, tried before *Kerr, J.,* and a jury, at October Term, 1919, of CARTERET.

Plaintiff alleged that in March, 1917, he was employed by the defendant as a laborer, and was assigned to the work of "hooking stone" by using grab-irons to fasten to the stone so as to move them or lift them up. The work was being done at pier No. 1, Morehead City, where the stone was unloaded from the cars and placed on barges to be taken to Cape Lookout, where defendants were engaged in constructing a breakwater for the Government. Plaintiff was placed under the authority of Mr. Armstrong, who was the superintendent or "boss" of the work, and who ordered him to break certain stone with a hammer. Plaintiff objected to breaking stone in that way, because it was not the usual way, and, also, was dangerous, but the superintendent insisted that he do so,

or, if he refused, he would have "to quit the job." The plaintiff, while breaking stone under the said orders, was seriously injured, his face being hit by flying stone and his eye knocked out. He alleged that the tools and implements used for handling the rock under Mr. Armstrong's orders were not of the proper and usual kind, or in general and common use for such work, and that by the negligent acts and conduct of the defendants, represented by their superintendent, his injuries resulted.

The defendants deny that that plaintiff's injury was caused by any negligence on their part, but, on the contrary, by the plaintiff's own negligence. They alleged that the stones to be moved and loaded on the barges, for the purpose of being carried to Cape Lookout, were of different sizes, and some of them were not to be broken. The plaintiff, they allege, knew what was the manner of doing the work, and that there was no risk to him if he performed his work properly.

The small stones were not broken. The plaintiff had been engaged in this work before, breaking stone with a sledge hammer, where it was thin and flat. Mr. Wheatley was employed by the Government as an inspector, and would indicate by a X mark on the stone whether it was to be drilled or broken, and thereupon, following this marking by the Government inspector, a stone of 5 feet long, 12 inches wide, and 8 inches thick would be broken by a sledge hammer. This was the usual and customary way of breaking stone of this character. These facts were all well known to plaintiff, and he had been engaged in this work for two years or more. The hammer in use was in good condition, and the piece of stone on which the plaintiff was working was 8 feet long and 12 inches wide. Before that time it was broken by tapping it with a hammer, when it would break, and there was danger in that, because it cracked just like a piece of ice and would fly all about. They allege that plaintiff said: "I knew it was dangerous to work with a sledge hammer, but I worked at it for two years, then I quit." Mr. Wheatley indicated with a X mark stones that were to be broken. All plaintiff had to see was that the stone was of certain size. There was evidence to support each of the two contentions. The plaintiff, among other things, testified: "The stone was marked to be drilled, and the fellows worked so much of it until they could not get it broken up and had to put it out on a sidetrack, and they had to pay 'murrage on it. Mr. Armstrong said: 'Now the stone that comes in flat don't put it out there; take the hammer out here and break it.' They could not keep up with it. I was afraid to use the hammer, and threw it away, and one day there were three pieces left in the car. He called me and said: 'What are you doing sending that stone out there; take the hammer up there on the platform and don't you ever send a car out with one or two pieces.' Of course I was under him, and I got the hammer and, at half past

JONES *v.* TAYLOR.

eight, I was breaking that stone, and a piece flew out, where the stone ought to have been drilled, and struck me in the eye and knocked it right out in my hand. I don't know whether Mr. Armstrong was on the job at that time or not, I am not sure, but he worked there most all of the time. I objected to breaking up the stone with the hammer; I told him it was dangerous; one boy had already got hurt with one, but I kept right on like he told me; if I did not I would have to get off the job. He told me if I did not I would have to get off the job. The piece of stone I was working on was about 12 inches wide and about 8 feet long. Mr. Wheatley, the Government man, would mark the stone, where they were to drill it, with an X, and it was against the law not to break a marked piece."

The judge charged the jury upon the various phases of the case, to which there was no objection, except in the respects hereinafter stated. The defendant asked for a nonsuit, and for an instruction that if the jury believed all the evidence the issues should be answered "No," which was refused. The defendant then requested that this instruction be given to the jury: "If the jury believe from the evidence that the defendant, D. L. Taylor & Company, furnished the plaintiff suitable tools to work with, and that the method of breaking the stone was a proper method for stone of this size, and that the plaintiff knew of the danger attendant on the work, and continued on the job for two years, he thereby assumed the risk and danger, and they should answer the second issue 'Yes.'" And also they asked for this instruction: "That if they found that the plaintiff knew of the danger, which was apparent to a prudent man, they will answer the second issue 'Yes.'" These prayers, it is stated in the case, were refused, except as given in the general charge.

The jury returned the following verdict:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: 'Yes.'

"2. Was the plaintiff guilty of contributory negligence, as alleged in the answer? Answer: 'No.'

"3. What, if any, damage is plaintiff entitled to recover? Answer: '$2,000.'"

Judgment on the verdict, and the defendant appealed.

*Abernethy & Davis for plaintiff.*
*Moore & Dunn for defendant.*

WALKER, J., after stating the case as above: The court properly denied the motion for nonsuit. There was, at least, conflicting evidence upon the issues as to negligence, and this carried the case to the jury.

If the plaintiff had been doing his work in a safe way, and defendant ordered him to do it in an unsafe way, with a threat to discharge him if he refused, and by reason of this negligent order he entered upon the work, which was dangerous, and was injured without his fault, he can recover his damages. It is the duty of the master not to expose his servant to unnecessary dangers while in the performance of the duty assigned to him, but, on the contrary, he is held to the exercise of ordinary care, and should use such care to furnish him with a reasonably safe place in which to perform his work, and with reasonably safe tools and implements with which to do it, and his failure, in this respect, if it proximately results in injury to the servant, constitutes an actionable wrong, for which he may recover his damages. *Marks v. Cotton Mills,* 135 N. C., 287; *Holt v. Mfg. Co.,* 177 N. C., 170; *Pressly v. Yarn Mills,* 138 N. C., 410. It is our duty, in passing upon a motion to nonsuit, to examine all of the evidence and to place the most favorable construction upon that which tends to establish the plaintiff's cause of action. The act of negligence here was in requiring the plaintiff to do his work in a dangerous manner, and forcing him to obey the negligent order of his superior by a threat to discharge him if he disobeyed it.

The instruction as to assumption of risk, which was requested by defendant, was substantially given, so far as was proper to give it, in the general charge of the court, which followed the approved precedents in such cases, and those in regard to contributory negligence. The instruction of the court was more complete and accurate than the prayers of the defendant, in the statement of the facts, and of the correct principle of law applicable to the facts, the prayers being somewhat deficient as to one or two of the material elements of assumption of risk and contributory negligence. They omitted all reference to proximate cause, *McNeill v. R. R.,* 167 N. C., 390; *Brewster v. Elizabeth City,* 137 N. C., 392. But, however this may be, the court charged properly and adequately upon this subject, although its language was different from that of the prayer. It was not required to adopt the words of the defendant's request, but could use its own form of expression, provided its instruction to the jury was substantially responsive to the prayer, even assuming that the latter was correct in itself. *Rencher v. Wynne,* 86 N. C., 268; *Graves v. Jackson,* 150 N. C., 383. It was held in *Pressly v. Yarn Mills, supra,* at p. 414: "While the employee assumes all the ordinary risks incident to his employment, he does not assume the risk of defective machinery and appliances due to the employer's negligence. These are usually considered as extraordinary risks, which the employees do not assume, unless the defect attributable to the employer's negligence is obvious and so immediately dangerous that no prudent man would continue to work on and incur the attendant risks." The court stated and

explained this rule and left it with the jury to find the facts and apply the rule to them. See, also, *Hicks v. Mfg. Co.,* 138 N. C., 319.

On the remaining question, the judge promptly interposed and sufficiently cautioned the jury as to the improper remarks of counsel, and thus rendered them harmless. *Greenlee v. Greenlee,* 93 N. C., 278; *McLamb v. R. R.,* 122 N. C., 862; *S. v. Hill,* 114 N. C., 780.

The request for an instruction to the effect that if the jury believed the evidence the verdict should be for the defendant was substantially the equivalent of the motion to nonsuit, and is covered by what we have said upon that part of the case.