GROVER MEDFORD v. REX SPINNING COMPANY.

(Filed 21 June, 1924.)

**Employer and Employee—Master and Servant—Negligence—Assumption of Risks—Instructions—Appeal and Error—Reversible Error.**

In an action by an employee against his employer to recover damages for a personal injury received in the course of his employment at a power-driven machine, involving the question of assumption of risk, etc., it is reversible error to the defendant's prejudice for the trial judge to instruct the jury as to the employer's liability upon this issue, but leave them uninstructed upon the evidence on the case tending to show that a man of ordinary prudence would not have continued to work in the face of the apparent danger under the circumstances.

APPEAL by defendant from *Bryson, J.,* at October Term, 1923, of SWAIN.

The action was brought to recover damages for personal injury alleged to have been caused by the defendant's negligence. Plaintiff went from Swain County to Gastonia to work for the defendant. He was 23 years old and was employed to keep the cards clean. The cards were set in rows about 18 inches apart and were operated by a small pulley about 10 inches from the floor. There was a larger pulley higher up. The two were connected by a rope belt. There was also a leather belt which was used to operate other machinery. The two belts were about 3 inches apart. The rope belt came off the pulley and the plaintiff attempted to put it back while the machinery was running. His left hand was caught in the belt and his arm was so injured that it had to be amputated. He testified in part as follows:

"How I came to get hurt was this: I was cleaning up about 8:15 and the belt flew off this rope, and I was trying to put it on and got down with my right hand near the floor to put it on the pulley with my left hand up here and put it on the top, and the second time it slipped off and the belt that run from the center to pull the cotton off the slats came down in there and gave a whirl and cut my arm. It is the usual custom used there to put the rope back with the hands when it comes off. The belt runs off very often; it run off because it was too big. Mr. Stewart had instructed me to put the belt on when the machinery was running; he was the card-room boss, or the card-room fixer, I do not know which—the one that fixes the cards. Mr. Biddy told me I would have to take orders from Mr. Stewart or get out. Mr. Biddy was the second man, and it was his duty to look after the card room. When the second man gives orders to the employees in that room, they obey it. . . . . It was not the pulley that caught the rope down there; it was the belt that runs the slats; it did not run as fast as the cylinder; there were two pulleys and two belts; one was a leather belt and the other was a rope belt; I tried to put the rope on the pulley; I could not say how close the leather belt was to me while I was doing that; I guess it was about 3 inches. The belt that run on the slats cut my hand. I was fooling with the belt that runs the cards. We had a leather belt that was running the machinery that took it off the slats and the rope belt that took it off the cards, and it was the leather belt that caught my hand and took it in there, and these two belts were running about 3 inches apart. I knew how to stop them; it was the easiest thing in the world to stop them both; the easiest thing was to take my hand and stop both belts like that (indicating).

"Q. If you had done that you would have had two arms today? A. I don't know.

"Q. Not been a thing in the world to catch you? A. No.

"Q. And you knew how to do that? A. Yes."

The issues of negligence, contributory negligence, assumption of risk, and damages were answered in favor of the plaintiff. Judgment. Appeal by defendant.

*Thurman Leatherwood and Alley & Alley for plaintiff.*
*Merrimon, Adams & Johnston for defendants.*

ADAMS, J. The defendant excepted to the following instruction in regard to the plaintiff's assumption of risk: "I again instruct you that upon the third issue the burden of proof is cast upon the defendant, and if you reach its consideration, if the defendant has satisfied you by the greater weight of the evidence that the injury to the plaintiff was the direct and proximate result of a risk assumed by him, then you would answer this issue 'Yes'; if you are not so satisfied you would answer it 'No.'" In the same connection his Honor had previously said: "As applied to an investigation of this nature, the law recognizes that when one enters into service he assumes certain risks, and that if injured while in such service as a result of a risk assumed, no liability attaches to his master for such injury. I instruct you that one who enters the employment of another does not assume risks which arise from any failure upon the part of the master to perform such duties as the law fixes upon him. These are termed additional risks which are not assumed when the relation of employer and employee is entered into."

The instructions embrace these three propositions: (1) the burden of proving assumption of risk is upon the defendant; (2) the plaintiff assumed only such risk as was incident to the work he was required to perform when properly conducted; (3) the plaintiff did not assume any risk arising from the defendant's failure to perform the duty it owed the plaintiff. It will be seen that no reference is made to the position on which the defendant chiefly relied; that is, even if the defendant had failed to exercise due care in providing a reasonably safe place for work or reasonably safe and suitable appliances, still the plaintiff assumed the risk of injury by continuing his work with knowledge of impending danger.

It is true that, when the master's negligence is the proximate cause of the servant's injury, the injured servant shall not be barred of recovery by the mere fact that he works on in the presence of a known defect, even though he may be aware to some extent of the increased danger; but if the danger is obvious and so imminent that no man of ordinary prudence, acting with such prudence, would incur the risk which the conditions disclose, the servant's knowledge of such hazard

would be treated as falling within the class of ordinary risks generally assumed by him in the prosecution of his work. This principle, clearly stated in *Hicks v. Mfg. Co.,* 138 N. C., 319, 327, has been approved in several subsequent decisions. *Jones v. Taylor,* 179 N. C., 293; *Howard v. Wright,* 173 N. C., 339; *Wright v. Thompson,* 171 N. C., 88; *Deligny v. Furniture Co.,* 170 N. C., 189, 203; *Pressly v. Yarn Mills,* 138 N. C., 410. Whether the danger of putting the belt in the pulley when the machinery was in motion was so obvious that a man of ordinary prudence would not have gone on with the work, was a question for the jury to determine upon all the evidence. *Pigford v. R. R.,* 160 N. C., 93, 101; *Tate v. Mirror Co.,* 165 N. C., 273. But this phase of the case was not presented by the charge. The jury were instructed to answer the issue "Yes" if they were satisfied by the greater weight of the evidence that the plaintiff's injury was the proximate result of risk assumed by him, that is, the ordinary risk incident to his work; but if they were not so satisfied to answer it "No," without an instruction as to whether the plaintiff's continuance of the work with knowledge of danger, notwithstanding the master's negligence, was an ordinary or extraordinary risk. The jury were left to infer that the only ordinary risks were those incident to the work when there was no negligence on the part of the defendant. For this reason a new trial is awarded.

New trial.