W. H. LEDFORD, BY HIS NEXT FRIEND, W. E. LEDFORD, v. TALLASSEE
POWER COMPANY, H. F. STARK, WILL DEREBERRY, AND JAMES
CONNOR AND CHARLIE CONNOR, THE SAID JAMES CONNOR AND CHARLIE
CONNOR DOING BUSINESS AS THOMAS CONNOR & SONS.

(Filed 10 June, 1927.)

**1. Evidence—Motions—Nonsuit—Circumstantial Evidence.**

Where various elements of a fact to be proven are so related and inter-
woven as to be sufficient when taken together to reasonably lead to a
conclusion in the minds of the jury as to the existence of the fact and
amounting to more than a scintilla, upon the defendant's motion as of
nonsuit they are to be taken in the view most favorable to the plaintiff,
with every reasonable intendment therefrom, and the motion will be
denied.

**2. Evidence—Master and Servant—Employer and Employee—Negligence
—Safe Place to Work—Motions—Nonsuit.**

Where there is evidence tending to show that the plaintiff, a youth of
seventeen years, inexperienced in such matters, was employed by the
defendant company to render services in a tunnel it was making to connect
the waters of two streams for furnishing additional power for its plant,
and was ordered by the vice-principal of the defendant to enter the tunnel
after an excavating explosion in the course of his employment, under
threat of a discharge if he disobeyed, and that he was permanently injured
from poisonous gas thus produced : *Held*, under the principle that it is the
nondelegable duty of the master to furnish his employee a safe place to
work an issue is raised for the determination of the jury, and defendant's
motion as of nonsuit will be denied.

**3. Same—Parties—Nonsuit as to Alter Ego — Actions — Nondelegable
Duty.**

Where there is evidence tending to show that the master had negli-
gently failed to furnish his servant a safe place to work, which proxi-
mately caused the injury in suit, and the vice-principal or *alter ego* of
the master has been joined in the action, the dismissal of the action as to
the *alter ego* does not affect the right of the plaintiff to recover of the
master for its failure to perform its nondelegable duty.

**4. Same—Safe Appliances—Questions for Jury.**

Where there is evidence tending to show that the plaintiff, in the course
of his employment, was injured by poisonous gases resulting from explo-
sions in excavating a tunnel for the defendant, that the ventilation was
insufficient, and for like work the method known, approved, and in general
use was to force, by a power-driven machine, air through the tunnel at a
length of one thousand feet, which had the effect of avoiding the danger,
evidence that the tunnel was not quite so long, and *per contra*, leaves the
question of the defendant's actionable negligence to the jury, under the
principle that the master owed a duty, under the rule of the prudent man,
to furnish his servant a safe place to work.

APPEAL by defendant, Tallassee Power Company, from *Stack, J.,* and
a jury, at January Term, 1927, of CHEROKEE. No error.

This is an action for actionable negligence, brought by plaintiff against the defendants for injuries sustained. The evidence, in substance: The Tallassee Power Company, a corporation, was connecting the Cheoah River with Tennessee River by means of a tunnel through the mountain. When some distance in the tunnel, about 12 August, 1926, some 350 or 400 sticks of dynamite were exploded in the head of the tunnel. Will Dereberry, the superintendent, who was head foreman for defendant H. F. Stark, ordered the plaintiff W. H. Ledford, a boy about seventeen years of age, some hours after the explosion, before the smoke had cleared away, to go to the head of the tunnel to help clean out muck and debris. The boy was working there about 30 minutes and fell, gassed. He was taken out of the tunnel unconscious. Five or six others had been taken out of the tunnel gassed. Since then he has had smothering in his chest and bleeding at his lungs. He received his pay checks from plaintiff H. F. Stark. It was alleged that there was no means of ventilation at the time of the injury.

W. H. Ledford, the boy, testified in part: "The smoke was coming out of the tunnel when I went in. I saw the smoke coming out of the pile of muck. When I saw this Dereberry told me to clean out the muck and set up the drill, and I knew it was to clean out the muck or quit, one or the other."

Dr. N. B. Adams, an expert, and the doctor who attended plaintiff, testified that it was gas poisoning—monoxide gas. That it caused leakage of the heart and the condition is permanent. "His disability is total. On account of the condition of his heart, it would be dangerous for him to attempt to do manual labor."

J. H. Emery, for plaintiff, testified in part: "The tunnel starts at the dam, Tallassee Power Company dam. I suppose the dam forces the water right into the tunnel." The plaintiff then asked the following question: "Q. Who is building that dam?" The defendant objects, objection overruled, and the defendant excepts. "A. Tallassee Power Company. The other end of this tunnel empties into the Tennessee River just above the Tapoco Dam. That is the Tallassee Power Company people's dam. I could not tell the distance. I have had some 20 years experience in tunnel and underground work." The plaintiff then asked the following question: "Q. Are you familiar with the means approved and in general use for ventilating tunnels similar to this one?" The defendant objects, objection overruled, the defendant excepts. "Q. What are they, Mr. Emery?" "A. The fans generally used for tunnels and mines, electric fans. There were no fans in this tunnel up to 12 July. I left there on 12 July, last year. When I left the tunnel must have been something like 800 to 1,000 feet from the mouth to its head. There was no shaft opening to let in the air, except the main

entrance. The compressed air was used for the purpose of running drills. I could not tell what compressed air is more than it is confined down until it has a power something like steam." The plaintiff then asked the following question: "Q. What damage, if any, is it any different after it is compressed to what it was before, if you know?" The defendant objects, objection overruled, and defendant excepts. "A. It has not the tendency of pure air for a man to exist on. Q. What, Mr. Emery, if you know anything about Tallassee Power Company conveying men to this tunnel to work?" The defendant objects, objection overruled, defendant excepts. "On their railroad from Tapoco to their dams on the trains. These trains have the words Tallassee Power Company on them." On cross-examination: "When I said fans were in general use in mines, I meant after it reached a certain depth. There will be no use in installing them at first."

The plaintiff then offered in evidence paragraph of the complaint in the case of E. G. Ledford, by his next friend, against H. F. Stark, Tallassee Power Company, Will Dereberry, James Connor, and Charles Connor, doing business as Connor & Sons, in the following language: "That Tallassee Power Company is a corporation, and at present, among other things, is engaged in building a power dam in the county of Graham, and driving and constructing a tunnel through the mountain between the Cheoah River and the Tennessee River, and was so engaged at the time of the grievance hereinafter complained of." The answer of the Tallassee Power Company to the paragraph is in the following words: "It is admitted that Tallassee Power Company is a corporation and engaged in building a power dam in Graham County, but it is denied that it individually is constructing a tunnel through the mountain, as alleged in said paragraph." Defendant Tallassee Power Company duly made exception.

As a defense, the defendants plead contributory negligence and assumption of risk. At the close of the evidence the defendant Tallassee Power Company moved for judgment as of nonsuit. Motion overruled, defendant excepts, and assigns this as its exception. Motion for nonsuit as to Thomas Connor & Sons allowed.

W. T. (Will) Dereberry, defendants' witness, testified: "As a usual rule, we drive a tunnel as far back as we can handy without using any ventilation. They don't usually use any ventilation until they drive the tunnel 1,000 or 1,500 feet back."

At the close of all the evidence, the defendants Tallassee Power Company, Will Dereberry, and H. F. Stark renewed their motion for judgment as of nonsuit. Judgment was denied, and each defendant excepted.

The issues submitted to the jury, and their answers thereto, were as follows:

"1. Was the plaintiff injured by the negligence of the defendants, as alleged in the complaint, and if so, which ones? Answer: 'Yes, Tallassee Power Company.'

"2. Did plaintiff, by his own negligence, contribute to his injury? Answer: 'No.'

"3. Did the plaintiff voluntarily assume the risk, as alleged in the answer? Answer: 'No.'

"4. What damage, if any, is the plaintiff entitled to recover from the defendants? Answer: '$3,000.' "

Numerous exceptions and assignments of error were made, and to the exceptions before stated, and appeal taken to the Supreme Court. The necessary ones will be considered in the opinion, and further necessary facts.

*Moody & Moody for plaintiff.*
*R. L. Phillips for defendants.*

CLARKSON, J. Rules of Practice in the Supreme Court, 192 N. C., p. 853, part Rule 28, is as follows: "Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him."

The exceptions to the evidence stated in the statement of case under the foregoing rule will be taken as abandoned. These exceptions are not assigned as error in appellant's brief, and the rule ignored.

On a motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

The first contention made by defendant Tallassee Power Company: "Was there sufficient evidence to connect Tallassee Power Company with the accident by showing that it owed the plaintiff any duty whatever?" We think there was more than a scintilla of evidence, and sufficient to be submitted to the jury. The evidence is circumstantial in its nature. In reference to such evidence, it is frequently argued that one twig is easily broken, but another is added, then another, and the whole together is hard to break. The twigs standing alone are weak, together strong, so with circumstantial evidence. "An old man on the point of death summoned his sons around him to give them some parting advice. He ordered his servants to bring in a faggot of sticks, and said to his eldest son: 'Break it.' The son strained and strained, but with all his efforts was unable to break the bundle. The other sons also tried, but none of them was successful. 'Untie the faggots,' said the father, 'and each of you take a stick.' When they had done so, he called out to them: 'Now

break,' and each stick was easily broken. 'You see my meaning,' said their father. Union gives strength." Æsop's Fables.

The Tallassee Power Company, H. F. Stark, and Will Dereberry are all sued as joint *tort feasors*. In doing work, boring a tunnel, or any class of work, as a matter of common knowledge, this can be done by parties working together or as independent contractors.

What are the circumstances in the present action connecting defendant Tallassee Power Company with carrying on the work? As the exceptions are abandoned, the evidence: (1) A tunnel was being bored through the mountain to connect Cheoah and Tennessee Rivers. The tunnel started at defendant Tallassee Power Company's dam. The Tallassee Power Company was building that dam. What was the dam for? To force the water into the tunnel being built—the water, when forced through the tunnel, flows or empties into the Tennessee River above another dam, the Tapoco Dam. This dam also is owned by defendant Tallassee Power Company. This tunnel being built with a flume is continuous when completed and connects the two dams of defendant. (2) The Tallassee Power Company had trains which had "Tallassee Power Company" on them. These trains ran from Tapoco to the defendant Tallassee Power Company's dam, and carried employees to this tunnel to their work. "I never saw any employees get passes." (3) Plaintiff offered in evidence part of the pleading-complaint in suit of E. G. Ledford by his next friend against H. F. Stark, Tallassee Power Company, and others, charging that the defendant Tallassee Power Company was engaged in building a power dam and drilling and constructing a tunnel between the Cheoah and Tennessee rivers—the same tunnel in which plaintiff sustained his alleged injuries. In answer to this charge, defendant Tallassee Power Company admits it is engaged in building a power dam, "but it is denied that it *individually* is constructing a tunnel through the mountain, as alleged." The implied admission is that it is not *individually* done by it, but in conjunction with others. The pleading was competent, although in another case—a declaration of the party. 22 C. J., sec. 374 (3); *Bloxham v. Timber Corp.,* 172 N. C., 37; *Alsworth v. Cedar Works,* 172 N. C., p. 17; *Pope v. Allis,* 115 U. S., p. 353.

The twigs altogether, the circumstantial evidence taken together, is sufficient to be submitted to the jury. *Hancock v. Southgate,* 186 N. C., p. 281.

The second position taken by defendant Tallassee Power Company: "Does the verdict, absolving the direct employer from liability, also absolve Tallassee Power Company, even if found to have been connected with the work?"

In the present action, plaintiff relies not only on the negligent order of Will Dereberry, the superintendent, in ordering plaintiff into the poisonous monoxide gas in the tunnel, but also that the defendant Tallassee Power Company did not use due or reasonable care in regard to the place plaintiff was to work.

As stated in *Riggs v. Mfg. Co.*, 190 N. C., at p. 258, citing numerous authorities: "It is well settled in this State 'That an employer of labor in the exercise of reasonable care must provide for his employees a safe place to do their work, and supply them with machinery, implements and appliances safe and suitable for the work in which they are engaged, and keep such implements, etc., in safe condition as far as this can be done by the exercise of proper care and supervision.' " *Robinson v. Ivey,* 193 N. C., 805.

The jury could have excused the defendants, other than the Tallassee Power Company, on the negligent order of Will Dereberry, and rendered the verdict on the failure to use due or reasonable care in regard to the place plaintiff was required to do his work.

*Connor, J.,* in *Nichols v. Fibre Co.,* 190 N. C., at p. 5, well says: "Liability of the master may be either primary, as arising from injuries caused by breach of duty which the master owes, and which he cannot delegate, or secondary, as arising from the maxim *qui facit per alium facit per se.* 'Where several grounds of liability are alleged, proof of one will be sufficient to authorize a recovery.' 20 R. C. L., and cases cited in note."

39 C. J., sec. 1602, at p. 1368, lays down the principle thus: "The foregoing principles have no application except in cases where the liability of the master is based solely on the wrongful acts of the servant who is acquitted. If the liability is not so based, a finding that the act of the particular servant was not wrongful does not prevent the rendition of a verdict against the master on the acts of other servants shown to be wrongful, and for which the master is liable on the doctrine of *respondeat superior.* So, a verdict against the master and an acquittal of the servant will be sufficient to sustain a judgment against the master where the act resulting in the injury complained of was committed under the express command of the master, or where the master and servant are sued jointly for injuries resulting from the negligence of both, and there is evidence of negligence on the part of the master distinct from the alleged negligent act of the servant. In these circumstances, a verdict of acquittal of the servant is not inconsistent with a verdict holding the master liable, and does not vitiate it."

The third position taken by Tallassee Power Company, that there was no evidence of negligence on its part. There was a conflict in the evidence as to how many feet had been tunneled into the mountain when the

injury was alleged to have occurred. The injury is alleged to have taken place on 12 August, 1926. The witness J. H. Emery testified that he left the tunnel on 12 July, 1926, about one month before the injury. "When I left, the tunnel must have been something like 800 to 1,000 feet from the mouth to its head. There was no shaft opening to let in air except the main entrance." Will Dereberry, defendant's witness, testified: "As a usual rule, we drive a tunnel as far back as we can handy without using any ventilation. They don't usually use any ventilation until they drive the tunnel 1,000 or 1,500 feet back." This testimony was in corroboration of Emery's testimony that ventilation was used after the tunnel was 1,000 feet. There was evidence *pro* that the ventilation at the depth plaintiff was working was foul and bad, and *contra.* In 39 C. J., sec. 488, the rule is laid down as follows: "It is the common-law duty of the operator to use ordinary care to furnish sufficient ventilation in the mine for the safety of his employees." *Robinson v. Ivey,* 193 N. C., at p. 813.

In *Hall v. Chair Co.,* 186 N. C., at p. 470, it is said: "Defense is interposed chiefly upon the ground that the machine was very simple; that the danger, such as it was, was open and obvious, and that the plaintiff assumed the risk of his injury. There was also a plea of contributory negligence. In fact, the pleas of assumption of risk and contributory negligence were both submitted under the second issue; and this, under authority of *Hicks v. Mfg. Co.,* 138 N. C., p. 333, is a matter which must be left largely to the legal discretion of the presiding judge."

In *Fleming v. Utilities Co.,* 193 N. C., at p. 266, it is said: "Instructions must be considered as a whole, and if, as a whole, they state the law correctly, there is no reversible error, although a part of the instruction considered alone may be erroneous." *Beal v. Coal Co.,* 186 N. C., at p. 754.

The briefs of both parties are well prepared and helpful.

From a careful consideration of the record, we can find

No error.