The plaintiff was duly appointed and qualified as administratrix of her husband, Herbert Street. This action is for actionable negligence. The plaintiff alleges that her intestate was killed through the negligence of defendant while working in its coal mine near Gulf, N.C.
The complaint alleges in part: "That the plaintiff's intestate was, a day or so previous to his injury and death, working for the defendant in the main air way, loading coal on cars which were operated in its mine, which was the regular position occupied by the plaintiff's intestate; but on the date aforementioned the plaintiff's intestate was ordered to leave his regular position and to perform the duties aforesaid, under the immediate supervision and control of the said W. H. Hill, and not knowing at the time of entering upon said duties in said air course that it was in a dangerous, nor was he, prior to the performance of such duties, advised of its dangerous condition, but was required to work, by the said W. H. Hill, at a place which was unsafe for him and the other employees working at said place in said `air course,' in all of said acts the defendant was negligent, and its said negligence was the proximate cause of the injury and death of the plaintiff's intestate. That the defendant was further negligent in that it failed and neglected to erect or construct a covering over the place where plaintiff's intestate was required to work, to prevent rock and dirt from falling upon him while in the performance of his duties, in which act aforesaid, the defendant was negligent, and its said negligence was the proximate cause of the injury and death of the plaintiff's intestate."
Defendant denied that it was guilty of any negligence, and set up the plea of assumption of risk and contributory negligence.
The issues submitted to the jury and their answers thereto, were as follows:
"1. Was the plaintiff's intestate injured and killed by the negligence of the defendant, as alleged in the complaint? Answer: Yes.
"2. Did the plaintiff's intestate voluntarily assume the risk and danger of his employment as alleged in the answer? Answer: No.
"3. Did the plaintiff's intestate by his own negligence contribute to his injury and death, as alleged in the answer? Answer: No.
"4. What damage, if any, is the plaintiff entitled to recover of the defendant for the injury and death of the plaintiff's intestate? Answer: $3,500." *Page 180 
The defendant made numerous exceptions to certain evidence introduced by plaintiff, and assigned errors. The material ones and facts bearing on same will be considered in the opinion.
Upon conclusion of plaintiff's evidence, the defendant moved for judgment as in case of nonsuit. C. S., 567. The motion was overruled, defendant excepted, assigned error and appealed to the Supreme Court.
The charge of the court below is not in the record. The presumption is that the court below charged the law applicable to the facts on all the issues. The plaintiff's intestate, Herbert Street, was an employee in defendant's coal mine at Gulf, in Chatham County, N.C. He had worked in the coal mine about eight years before he was killed about 14 August, 1927. He was struck while working in the coal mine in the head by a falling rock the size of a man's hat, which broke into several pieces when it struck him, fracturing his skull. He was struck about 3 o'clock on Saturday and died Sunday evening following at 4 o'clock.
The plaintiff's intestate was working under the direction of W. H. Hill, superintendent of defendant's coal mine, who was his boss. In working in the tunnels in the coal mine underground, it was necessary to have an aircourse. The air course was thirteen feet wide. There was a break in it overhead, and it was being repaired. Plaintiff's intestate was working fixing the brace, aiding in timbering and putting up the framework under Hill's direction. There was nothing overhead to protect him from anything that might fall from the top. The air course had fallen in, plaintiff's intestate was helping to get it opened up so ventilation would come through.
Defendant complains and assigns error to the following questions and answer of Fisher Holmes, witness for plaintiff, who testified, in part, as follows: "I have been in the mine work for eighteen years. Half the time on work of the character Herbert Street was doing in the Erskine-Ramsey Mine when injured. In West Virginia, East Virginia and North Carolina. There was a falling in from overhead; they were loading traffic that was falling in and timbering up; setting legs on the side and putting collars across. Q.What is the general and approved method of that kind of work? Q. What isthe customary way? A. In most of the places where I have been doing thiskind of work we use a structure of fore-poling, or rat-tailing. The timber would be set erect over the hole — the framework. The timber must be set as much as four or six feet ahead over the timbers for protection over you under here *Page 181 
making the second brace. You pole ahead if you want to continue. That is for protection until you erect another column. We erect timber legs on each side of the wall and set out timber across the fore-pole across four feet ahead and six feet ahead for the particular purpose of erecting another column for protection. This fore-poling is close, like that, right over your head, and then you can erect another column under the fore-pole across like that, extended over. This notifies you of rock and dirt. It would not be sufficient as to save a man, but it would notify and protect in that way. You can hear the dropping and get back. Different sizes of timbers are used. Whether you can put a sufficient amount of timber in to protect against rock and dirt which might fall from above depends on how large it is. I have seen rocks fall from above as big as this desk, or larger than those tables. Q. How about a rock as big as your that? A. Well, you couldfore-pole enough, I think, to protect that."
As to the first question and answer: The general principle is well settled in this jurisdiction, as laid down in Hicks v. Mfg. Co., 138 N.C. at pp. 325-6: "It is accepted law in North Carolina that an employer of labor to assist in the operation of railways, mills and other plants where the machinery is more or less complicated, and more especially when driven by mechanical power, is required to provide for his employees, in the exercise of proper care, a reasonably safe place to work and to supply them with machinery, implements and appliances reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use in plants and places of like kind and character; and an employer is also required to keep such machinery in such condition as far as this can be done in the exercise of proper care and diligence. Witsell v. R. R.,120 N.C. 557; Marks v. Cotton Mills, 135 N.C. 287." Steeley v. Lumber Co.,165 N.C. 27; Orr v. Rumbough, 172 N.C. 754; Lynch v. Dewey, 175 N.C. 152;Thompson v. Oil Co., 177 N.C. 279; Beal v. Coal Co., 186 N.C. 754;Thomas v. Lawrence, 189 N.C. 521; Robinson v. Ivey, 193 N.C. 812;Ledford v. Power Co., 194 N.C. 98; Smith v. Ritch, ante, 72.
Seaboard L. R. Co. v. Horton, 233 U.S. at p. 501, reversing this Court (162 N.C. 424), it is said: "The common-law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employees is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen."
It is the duty of the employer, in the exercise of ordinary care, to furnish an employee with a reasonably safe place to work. This is especially so where the place is more or less dangerous. The employer *Page 182 
is not an insurer of the employee's safety. Before directing an employee to work in a place of more or less danger, it is the duty of the employer to use due care to see that the place is reasonably safe for the employee to perform his work. To do this, it is the duty of the employer to use such means and methods that are approved and in general use at a place of like kind and character.
The witness, Fisher Holmes, was recalled by plaintiff and, without objection, testified as follows: "I went off the shift just before Herbert Street came on when he was hurt. I worked at the same place where Herbert Street was hurt — just before he was hurt. I am familiar with the work that was being done, and the conditions in which it was being done.The generally used and approved method of work is fore-poling. It waspractical to fore-pole the work where Herbert was injured. This would havemade it safe."
McKinley Street, a witness for plaintiff, testified, without objection: "I have worked in the mine about seven years. In the Ramsey Mine, and in Virginia and West Virginia. I have had a little bit of experience in repairing air courses and overhead work — not very much. At the timethat Herbert was fixing the brace there was nothing overhead to protect himfrom anything that might fall from the top. Foster Horton and Mr. Hill were there. Mr. Hill was superintendent of the mine at that time. He gave instructions to Herbert and me as to where to work and what we were to do. He was also Herbert's boss. Q. At the time Herbert was hurt from falling rock, did you know whether he was doing what he had been told to do by Mr. Hill? A. Yes, sir. He was doing what he had been told to do." Recalled: "Q. Was there anything said by Mr. Hill about there being any danger in doing that work? A. No, sir, I do not know what Mr. Hill said to Herbert Street about danger; he said nothing to me, and I did not hear him say anything to Herbert about the place or its dangerous condition. Q. Were you close together? A. Yes, sir, about as far as over that table. Four or five feet from him. Herbert's character and reputation for thrift, industry and work were good."
Foster Horton, a witness for plaintiff, testified, without objection: "At the time Herbert Street was hurt we were timbering, putting up framework where we were working. There was nothing overhead to preventanything from falling. The air course had fallen in and we were trying to open it up, get it opened up so ventilation would come through. . . . I was with Herbert Street when he was hurt. I am familiar with the method offore-poling work of this kind. It was practical to have fore-poled thiswork where Herbert Street was injured (Recross) They did fore-poling in this mine before. That is the only way they ever did work of this kind. I do not know how many times *Page 183 
I have done work like this. They were not fore-poling it this time, andthat is the only safe way to do it. I have never worked in any other mine."
We do not think the assignment of error can be sustained. The objection was cured by testimony, unobjected to, that "The generally used and approved method of work of this kind is fore-poling."
As to the other assignment of error: The witness Holmes was permitted, over objection, to give his opinion that "fore-poling" would have protected the employee against a rock "as big as your hat." We think this cannot be sustained.
"Where an inference is so usual, natural, or instinctive as to accord with general experience, its statement is received as substantially one of a fact — part of the common stock of knowledge." 22 C. J., p. 530, citing numerous North Carolina cases. Britt v. R. R., 148 N.C. 37; Kepleyv. Kirk, 191 N.C. at p. 694. Nor did it invade the province of the jury. See S. v. Carr, ante, 129.
In any event, it was waived by the evidence unobjected to. "This would have made it safe." "Nothing overhead to protect him from anything that might fall from the top." "That is the only safe way to do it."
Quoting from Hicks' case, supra, at pp. 326-7, citing numerous authorities, it is said: "But where there has been no legislation, as in the class of cases we are now considering, it has been declared in this State in several well considered decisions that where such employer of labor has been negligent in failing to supply his employees with appliances, tools, etc., reasonably safe and suitable for the work in which they are engaged and such as are approved and in general use, and such negligence is the proximate cause of the injury to the employees, such injured employee shall not be barred of recovery by the fact that he works on in the presence of a known defect, even though he may be aware to some extent of the increased danger. To have such effect, that is to bring the knowledge of such observed conditions of increased hazard imputable to the master's negligence, into the class of ordinary risks which the employee is said to assume, the danger must be obvious and so imminent that no man of ordinary prudence, and acting with such prudence, would incur the risk which the conditions disclose." Medford v. Spinning Co., 188 N.C. 125;Crisp v. Thread Mills, 189 N.C. 89; Parker v. Mfg. Co., 189 N.C. 275;Holeman v. Shipbuilding Co., 192 N.C. 236; Ogle v. R. R., 195 N.C. 795. The matter is fully discussed in Maulden v. Chair Co., ante, 122.
In Jefferson v. Raleigh, 194 N.C. at p. 482, it is said: "It is not essential that the particular injury could have been foreseen, but that some injury was likely to flow from the method used in performing the work. This principle of liability, first announced in Drum v. Miller, 135 N.C. 204, *Page 184 
flows through the decisions without a break, but with increasing volume. Hall v. Rinehart, 192 N.C. 706."
An interesting article appears in the Industrial Engineering (New York) describing dust masks for workers. It is humanitarian and in part says: "The numerous industries in which workers perform their labor in atmosphere charged with unwholesome and poisonous dusts or gases will be interested in a device developed by the Federal Bureau of Mines, which serves all the purposes of a hat, and at the same time intercepts the dangerous dust particles that would otherwise penetrate the lungs of the wearer. When the device is worn by miners, it should tent to ease the blow of any disclosed piece of rock that might tumble down upon the head of the worker."
We think the court below was correct in overruling defendant's motion for judgment as in case of nonsuit. We find
No error.